FRED S. ROGERS, *et al.*, VS. W. J. BONNETT, *et al.*

1. The board of trade of Kingfisher, a corporation, incorporated with $150 as its capital stock, of which less than $75 was paid up, contracted with A to pay to him $700 upon the erection of a flouring mill, but failed to do so, and upon suit brought by A, against the corporation, in the district court for Kingfisher county, and judgment having been obtained against the corporation for the sum contracted for as above, and execution issued, it was found to be without property, and insolvent. A receiver was appointed who brought suit in the

district court against the plaintiffs and defendants, as directors, to recover against them, in their individual and private capacity, upon the contract with A, and recovered a judgment against them for the sum of $675, which was compromised and paid, in different proportions, by S, B, W, and R. Defendants in error, S and B, brought suit in the probate court against W and R, and the other parties to the suit, for contribution. *Held:* That the contract made by defendants and plaintiffs with A was in violation of ch. 18, art. 3, § 10, Statutes of Oklahoma, 1890, and was illegal, and known by plaintiffs and defendants to be so, or. if not known to be so by them, their ignorance of its illegality was inexcusable; that plaintiffs and defendants were joint wrongdoers, and contribution will not be enforced.

2. The probate court has the same jurisdiction as that of the district court in suits at law, or in equity, for the recovery of any sum of money, not exceeding one thousand dollars, exclusive of costs, subject to the exceptions stated in ch. 18, art. 15, § 1, Statutes of Oklahoma, 1893.

3. The refusal of the court below to state findings of fact in writing, and conclusions of law upon them, when requested so to do by either party to a suit, before judgment, is reversible error.

*Error from the Probate Court of Kingfisher County.*

*T. G. Cutlip,* for plaintiffs in error.

*W. A. Taylor,* for defendants in error.

The opinion of the court was delivered by

McATEE, J.:   This action was begun in the probate court of Kingfisher county, on the 17th day of May, 1893, to enforce contribution from alleged joint obligors upon a contract made by the board of trade, a corporation of the city of Kingfisher, with one C. B. Addison, by which said corporation bound itself to pay seven hundred dollars to Addison, upon the erection and maintenance by him of a flouring mill in the city of Kingfisher.   Addison erected and maintained the mill, and demanded of the corporation the stipulated sum of seven hundred dollars, and received therefrom the sum of twenty-three dollars, and no more.

On October 13, 1891, Addison sued the corporation

in the district court for the balance of the sum of seven
hundred dollars remaining unpaid; obtained judgment
thereon, and caused execution to be issued thereunder,
upon which return was made of "no property found."
Addison, thereupon, applied to the district court for
the appointment of a receiver for the corporation,
alleging that the subscribed capital stock was but
$150, and that the amount of the paid up capital was
less than $75, and that the amount agreed by the cor-
poration to be paid to him, Addison, was greatly in
excess of the capital stock, in violation of law,
and that the directors were liable to him, in their indi-
vidual capacity, for the amount of the indebtedness
remaining due upon the contract made with him.    The
court appointed a receiver, and directed him to com-
mence suit against the directors, among whom were
the parties to this suit, and the receiver thereafter ob-
tained against them therein a judgment for the sum of
six hundred and seventy-three dollars, which was after-
ward compromised and paid, in various proportions, by
Solomon, Bonnett, Wallace and Rogers.    The defend-
ants bring the case here, and charge error in this:
That the court had no jurisdiction of the subject mat-
ter of the action; that the court refused to make writ-
ten findings of fact and conclusions of law; that the
court refused to permit the appellants to file a motion
for a new trial.

The contention of the appellants upon the first
assignment of error is, that this is a suit for contribu-
tion, and hence equitable in its character; that the
probate court has no equity jurisdiction, except that
which was expressly conferred by law; that it has
also a limited jurisdiction, and that, with certain ex-
ceptions of which this is not one, the probate courts
have no powers except in common law cases upon a
money demand in which the aid of equity is required
to retain the status of the parties, and of the subject

matter pending litigation. It is also contended by plaintiffs in error that actions at law, and in chancery, are constitutional branches of judicial procedure, and that the act of congress creating the government of this territory, and conferring the judicial power upon the supreme court, and the district courts of the territory, recognized and maintained a clear distinction between common law and chancery actions.

It is by the act extending the jurisdiction of probate courts in civil and criminal cases, passed by the legislature of Oklahoma, which took effect December 25, 1890, and in art. 15, § 1 thereof, provided, that "Probate courts * * * shall in civil cases have concurrent jurisdiction with the district courts in all civil cases in any sum not exceeding one thousand dollars exclusive of costs," etc. And it was by act of congress of March 3, 1891, as contained in the supplement to the revised statutes of the United States, vol. 1, 2d ed. p. 929, enacted as follows:

"Provided, that in addition to the jurisdiction granted to the probate courts and the judges thereof in Oklahoma Territory by legislative enactments, which enactments are hereby ratified," etc.

So that in all civil cases in which a sum of money is sought to be recovered not exceeding one thousand dollars exclusive of costs, the probate court has the same, or concurrent jurisdiction as the district court. "Concurrent," is "having the same authority. * * * such as such courts have concurrent jurisdiction, that is, each has the same jurisdiction." (Bouv. Law Dict. p. 311).

" 'Concurrent jurisdiction' " is that of several different tribunals, each authorized to deal with the same subject matter." (Rapalje & Lawrence's Law Dict.)

The probate court has therefore the same authority and is authorized to deal with such a case in the same manner and to the same degree and with the same

jurisdiction as that of the district courts; and "civil" cases is undoubtedly used in the statute as opposed to "criminal" cases.

And civil actions, therefore, included any action in which a litigant may be entitled to a civil remedy; that is, to a remedy which is legal in its character, or to a remedy which is equitable in its character.

The recovery sought here is for a sum of money less than a thousand dollars. This case does not fall under one of the exceptions to the provision above cited enlarging the jurisdiction of the probate court. The probate court has therefore jurisdiction to hear this case.

It is also contended by plaintiffs in error that actions at common law and in chancery are constitutional branches of judicial procedure, and that the act of congress creating the government of this territory, and conferring judicial power upon the supreme court and the district courts, recognize and maintain a clear distinction between common law and chancery actions, and that the code abolition of these actions will not prevail in federal courts. Upon this contention it is to be said that the only provision made upon the subject in the constitution of the United States is as follows: "The judicial power shall extend to all cases in law and equity arising under the constitution or laws of the United States, treaties made, or which shall be made under their authority," etc. So that actions at law and in chancery are not constitutional branches of judicial procedure, since no provision is made concerning them in the constitution. The only provision relating to this matter contained in the Organic Act is that of § 9, that "the supreme and district court shall possess chancery as well as common law jurisdiction," and there is therefore no "clear distinction" preventing the operation of that portion of that provision of art. 2, of § 10, of the code of civil

procedure, which "abolishes the distinction between actions at law and suits in equity," which provides that "the forms of all such actions and suits heretofore existing are abolished, and in their places there shall be hereafter but one form of action which shall be called a civil action."

Neither is this a case which, as is contended, appeals to the federal powers of the court.

Error is again assigned in this, that the court refused to make written findings of fact and conclusions of law thereon, at plaintiff's request. It is provided by the code of civil procedure of 1890, art. 19, § 2, that if any one of the parties request it, with a view of excepting to the decision of the court upon the conclusions of law involved in the trial: "the court shall first state the facts in writing, the conclusions of law upon them, and judgment shall be rendered accordingly." The record shows that when the case came on for trial and before the taking of testimony, the defendants in error moved the court in writing to separately state its findings of fact and conclusions of law, which the court failed to do. This is reversible error.

Error is again assigned in this, that the complaint does not state facts sufficient to constitute a cause of action, and that the demurrer of plaintiffs in error covered the objections to the petition and evidence, that contribution cannot be enforced in this case since the statute under which this action is brought, to-wit: Ch. 18, art. 3, § 10, Statutes of Oklahoma, 1890, provide that, "Directors of corporations must not make or create debts beyond their subscribed capital stock; * * * for a violation of the provisions of this section; * * * they are in their individual and private capacity jointly and severally liable to the corporation and to the creditors thereof in the event of its dissolution, to the full amount of the debts con-

tracted." It is hereby provided that for a violation of its provisions the directors shall be liable in their individual and private capacity, both jointly and severally, to the corporation and its creditors. The provision here made is for the benefit of the corporation itself and its creditors. No relief is afforded by it to the directors by which the liability is created as between themselves and against each other for contribution. If any such relief exists, it must be drawn from the principles of the common law.

This suit is in no sense a suit upon contract. It is a suit brought as the pleadings and evidence shows, to enforce a liability created by statute. That makes this a case to enforce a penal liability or penalty. A liability created by the statute is in the nature of·a punishment for a violation of its provisions, and is therefore a penalty for wrongdoing. (Bouv. Law Dict. vol. 2. p. 318.)

A penalty or penal sum is a sum of money payable as an equivalent or punishment for an injury. (Rapalje & Wallace's Law Dict. vol. 2, p. 944.]

A statute providing that officers of certain corporations shall be personally liable for the debts of the corporation in case they fail to file the annual certificates of their condition, imposes a penalty. (*Mitchell vs. Hotchkiss*, 3 Will on Executors, 3d Am. ed. 1729. 6 How. 11.)

And those upon whom the penalty is imposed are in the eye of the law wrongdoers.

A contribution will sometimes be enforced as between wrongdoers. The rule is that if the person seeking the contribution knew the act by which the liability arose to be illegal, or if the circumstances were such "as to render his ignorance inexecusable, then he will be left by the law where his wrongful action placed him. * * * Whoever by his pleadings in any court of justice avows that he has been engaged

with others in an unlawful action, or concerted with them an unlawful enterprise, and that in arranging for carrying it out he has been unfairly treated by his associates, or has suffered an injustice which they should redress, will be met by a refusal by the court to look any further than his pleadings, which it will at once order to be dismissed." (Cooley on Torts, pp. 148, 149; *Herr vs. Barber*, 2 Mackay, 545; *Miller vs. Fenton*, 11 Paige, 18; *Campbell vs. Phelps*, 1 Pick. 62, 65; *Vose vs. Grant*, 15 Mass. 505, 521; *Peck vs. Ellis*, 2 Johns. ch. 131; *Acheson vs. Miller*, 18 Ohio. 1; *Crumpston vs. Lambert*, 18 Ohio St. 81; *Armstrong Co. vs. Clarion Co.*, 66 Pa. St. 218; *Philadelphia vs. Collins*, 68 Pa. St. 106; *Coventry vs. Barton*, 17 Johns, 142; *Percy vs. Clary*, 32 Md. 245; *Spaulding vs. Oakes*, 42 Vt. 343; *Churchill vs. Holt*, 131 Mass. 67.)

If the same facts are shown upon the evidence, the same reasoning will apply.

The rule may appear to be a hard one, but it is well established.    It is founded upon the reasons that whoever engages in an enterprise forbidden by the law, is, in case of its failure, held by the courts to be not only liable to that extent which would be his share if the enterprise had been a legal one, but will be held liable to the whole extent of the loss, as a deterrent from adventuring in such engagements, and that the state will not undertake the expense and use the courts to administer equity as between wrongdoers for violations of law.    The act was undoubtedly passed by the legislature for the purpose of protecting persons who enter into engagements with corporations from being imposed upon by fraudulent contracts made in the name of, and purporting to be made in behalf of, these institutions, to do that which the limited amount of the subscribed capital stock disabled them from doing. And if directors persist in making such contracts, notwithstanding and in defiance of the statute, the courts

will not aid them as between themselves, in doing equity.

In the case before us, the plaintiffs and defendants united in forming a corporation with a subscribed capital stock of $150, of which less than $75 was ever paid up, and proceeded to create a debt to C. B. Addison of $700, or more than four times as great in amount as the subscribed capital stock. The plaintiffs, as well as the defendants, were directors in the corporation, and joined in the act forbidden by the statute under which they had just formed the corporation in whose name they undertook to contract. Can it be believed that they were ignorant of these provisions? Are directors who avail themselves of the large powers and privileges accorded to corporations by statute in this territory to be heard to plead ignorance of the liabilities and penalties imposed by the same statute, for a violation of its provisions?

As directors of the board of trade, the plaintiffs, with the defendants, undertook to recommend that corporation to Addison as good in its corporate capacity for the sum of seven hundred dollars. Did they not know that the subscribed capital stock of that corporation was but one hundred and fifty dollars? It was their duty, as directors, to know all of the liabilities resting upon them, as well as the rights provided for them by the statute. If they did not know them otherwise, the proposition to create a liability more than four times as great as the subscribed capital stock should have caused them to halt; to inquire and to inform themselves of the law. We believe the circumstances in this case were such as to render ignorance of the illegality inexcusable, and that upon the present assignment of error, the plaintiffs must be left where their wrongful action has placed them.

The judgment of the probate court will be reversed.

By the Court: It is so ordered.

All the Justices concurring.