### 16541

### STATE v. HOWELL
(66 S. E. (2d) 701)

*Messrs. J. D. Parler,* of St. George, and *A. R. McGowan,* of Charleston, *for Appellant,*

*Messrs. Randolph Murdaugh,* Solicitor, of Hampton, and *T. C. Callison,* Attorney General, and *William A. Dallis,* Assistant Attorney General, of Columbia, *for Respondent,*

September 11, 1951.

OxnER, Justice.

This is an appeal from an order overruling a plea of *autrefois acquit* interposed by appellant to an indictment charging him with murder. The testimony, records and various proceedings had in the case disclose the following facts:

On the afternoon of February 10, 1949, appellant shot and fatally wounded one David Lee Ferdell at or near the bridge over the Edisto River on U. S. Highway No. 15. While it is conceded that Ferdell died in Colleton County, there is a considerable dispute as to whether he was shot in that county or in Dorchester County.

Appellant's version of the homicide is that upon arriving at his cottage located about 350 yards below the bridge on the Dorchester side of the river, he saw two men in a boat carrying away his outboard motor; that after securing a .22 rifle from his house, he endeavored to apprehend them; that one of the men escaped but he seized the other, who later proved to be Ferdell, intending to take him to a nearby village for the purpose of telephoning the officers; that to this end, he marched Ferdell through the swamp to the highway, closely following with his rifle; that upon reaching the highway on the Dorchester side of the river, Ferdell turned and assaulted him with a hatchet, whereupon he shot him in self-defense; and that after the shooting, Ferdell ran across the bridge to the Colleton side and was later found dead in the woods nearby.

Shortly after the occurrence, officers from both Dorchester and Colleton counties arrived at the scene. Two deputy sheriffs from Dorchester County assert that they arrived first and arrested appellant after he stated that the shooting occurred in Dorchester County. The Sheriff of Colleton County and one of his deputies state that when they arrived appellant was not in the custody of anyone and after a brief investigation, they arrested him. The deputy sheriffs from Dorchester County claimed that they were entitled to the prisoner but the Sheriff of Colleton County refused to surrender him and took appellant to Walterboro where he was lodged in jail. The next morning, February 11, 1949, the Coroner held an inquest resulting in the issuance of a warrant by a Colleton County magistrate charging appellant with the murder of Ferdell. Later during the day a Justice

of this Court admitted him to bail in the sum of $3,500.00, and proper bond in this amount was promptly filed, conditioned upon his appearance at the next term of the Court of General Sessions for Colleton County to answer any bill of indictment preferred against him.

Notwithstanding the foregoing proceedings had in Colleton County, on the day of the homicide, one of the deputy sheriffs of Dorchester County applied for and procured from a magistrate of that county a warrant charging appellant with the murder of Ferdell. On the following day, February 11th, a bond for $2,000.00 was filed by appellant in Dorchester County, conditioned upon his appearance at the next term of court of that county to answer any bill of indictment preferred against him. However, there is no record in Dorchester County of any order authorizing this bond.

At the April, 1949, term of the Court of General Sessions of Colleton County, appellant was indicted for the murder of Ferdell. The case was continued by the presiding Judge, the late lamented Judge Gaston, on motion of appellant. It was again continued on appellant's motion at the June, 1949, term by Judge Johnson and was likewise continued at the September, 1949, term of court which was presided over by Judge Moss.

Shortly prior to the April, 1950, term of the Court of General Sessions for Colleton County, the solicitor of the Fourteenth Circuit, Honorable Randolph Murdaugh, notified counsel for appellant that he was very anxious to try the case at the approaching term of court but if this could not be done, he at least wanted appellant present so that he might be arraigned. When the court convened on April 3, 1950, appellant failed to appear and a bench warrant was issued on the following day.

The Court of General Sessions for Dorchester County also convened on April 3, 1950. Dorchester and Colleton counties are in different judicial circuits, Dorchester being in the First Circuit and Colleton in the Fourteenth. Honor-

able Julian S. Wolfe is solicitor of the First Circuit. Shortly after the convening of the Dorchester County court, Solicitor Wolfe presented to the grand jury a bill of indictment charging appellant with the murder of Ferdell, in which it was alleged that the shooting occurred in Dorchester County. A true bill was promptly returned by the grand jury. The case was later tried during the same day and at the conclusion of the testimony, Judge Moss, the presiding Judge, on motion of appellant, directed a verdict of not guilty upon the grounds that the undisputed testimony showed (1) that appellant killed deceased in self-defense and (2) that appellant, having lawfully arrested the deceased for the commission of a felony, was justified in shooting him to prevent his escape.

The record of the trial in Dorchester County does not show that any question was raised as to the pendency of the indictment against appellant in Colleton County. In an affidavit subsequently made by the Sheriff of Dorchester County, he stated that he was not informed of any plan to try appellant in Dorchester County until advised to that effect by the solicitor on Thursday preceding the convening of court, and that he took no part in the trial of the case. He further stated that he attended the inquest in Colleton County, from which he concluded "that the alleged crime had been committed in Colleton County and was a Colleton County matter" and since then had "had nothing further to do with the case." The associate counsel for appellant at Walterboro stated in his affidavit that he was not advised of any intention to try appellant in Dorchester County and knew nothing of that trial until he saw an account of it in the newspapers on the following day. Solicitor Murdaugh stated in an affidavit that he was never given any notice of the proceedings in Dorchester County, knew nothing of the contemplated trial of appellant there, and was surprised to learn on the day after the trial that appellant had been indicted and acquitted. No explanation is given in the record as to why, without consultation with Solicitor Murdaugh,

appellant was indicted and tried in Dorchester County after he had been indicted approximately one year previously in Colleton County and the case continued in that county on motion of appellant for three consecutive terms.

On April 25, 1950, appellant was arrested and lodged in jail at Walterboro under the bench warrant issued by the Court of General Sessions of Colleton County on April 4, 1950. He immediately petitioned this Court for a writ of habeas corpus. These proceedings were heard by us at the May, 1950, term and in June an order was filed in which it was held that the bench warrant was properly issued and that appellant was not unlawfully restrained of his liberty. We there stated that the merits of the plea of *autrefois acquit* were not properly before us and that it was appellant's "duty to have appeared at the Court of General Sessions for Colleton County and there interposed any plea or defense that he desired to offer." We admitted him, however, to bail in the sum of $3,500.00.

Subsequently a change of venue was granted from Colleton to Beaufort County. When the case was called for trial, appellant moved to quash the indictment upon the ground that he had been acquitted upon the charge contained therein. Trial by jury of any disputed issues of fact was waived and counsel agreed that the plea of *autrefois acquit* should be heard and determined upon its merits by Judge Lewis, who was then presiding in Beaufort County. The testimony taken at the Coroner's inquest, the transcript of the trial had in Dorchester County, the record of the habeas corpus proceedings in this court, and the proceedings had in Colleton County were all introduced in evidence and in addition some testimony was taken. Thereafter in an order filed on December 18, 1950, the plea of *autrefois acquit* was overruled. Judge Lewis held that assuming that the fatal blows were inflicted in Dorchester County, the Court of General Sessions of Colleton County had jurisdiction; that since that court first acquired jurisdiction of the case, it retained same to

the exclusion of any other court; and that the Court of General Sessions for Dorchester County was wholly without jurisdiction to try the case, and "its attempt to do so was a nullity."

The question presented for decision is whether the Court erred in overruling appellant's plea of *autrefois acquit*. The elements necessary to sustain such plea are succintly stated in *State v. Bilton,* 156 S. C. 324, 153 S. E. 269. The only requirement therein stated which need be considered on this appeal is whether appellant was tried and acquitted by a court of competent jurisdiction, for it is stated in the brief of the State: "From the record in this case, it is shown that the sole issue under the plea of former acquittal concerns the jurisdiction of the court of Dorchester County to try the defendant for the particular offense, all other elements of the plea having been shown. If the court in Dorchester County had jurisdiction, then the plea of former jeopardy must be sustained; if not, the plea of former jeopardy must fall." The State also expressly disclaims in its brief any contention "that there was fraud or collusion in this case." So that in determining whether the plea of *autrefois acquit* should be sustained, it is only necessary to inquire whether the Court of General Sessions of Dorchester County had jurisdiction to try the case. Of course, an acquittal in a court not having jurisdiction to hear and determine the charge against the accused is no bar to a subsequent prosecution for the same offense in a court of competent jurisdiction. *State v. Rountree,* 127 S. C. 261, 121 S. E. 205; 15 Am. Jur., Criminal Law, Section 373. But "where a crime can be legally prosecuted in one of several counties, accused can plead a former conviction or acquittal of the same offense in one county against other prosecution for that offense in any of the counties in which the venue might have been laid originally." 22 C. J. S., Criminal Law, § 244.

Under Section 1020 of the 1942 Code enacted in 1880, where any person is injured in one county and dies in another, the person inflicting such injury may be indicted and tried in either county. See *State v. Mc-Coomer*, 79 S. C. 63, 60 S. E. 237. Although there is a sharp conflict in the evidence as to the county in which deceased was shot, there is sufficient evidence to sustain the finding necessarily made by the Court of General Sessions of Dorchester County that the fatal wounds were inflicted in that county. As previously stated, it is undisputed that the deceased died in Colleton County. Under these circumstances, appellant was subject to indictment and trial in either of these counties. Section 1020 of the Code does not undertake to fix exclusive jurisdiction in either county. The common law rule, therefore, applies "that where several courts have concurrent jurisdiction of the same offense the court which first acquires jurisdiction of the prosecution retains it to the exclusion of the others." 22 C. J. S., Criminal Law, § 111, page 186. Or, as stated in 26 Am. Jur., Homicide, Section 242: "In such cases, the court first obtaining jurisdiction of the person of the slayer retains it, to the exclusion of the court of the other county, and proceeds to try the case and administer justice therein."

The State's contention that the tribunal in which appellant was tried was without jurisdiction is based solely on the fact that jurisdiction first attached in the Court of General Sessions of Colleton County which, it is said, gave that court exclusive jurisdiction of the prosecution. But we do not think that this is a correct interpretation of the rule heretofore stated. In *Covell v. Heyman*, 111 U. S. 176, 4 S. Ct. 355, 358, 28 L. Ed. 390, it was stated: "The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity with perhaps no higher sanction than the utility which comes from concord". The effect of the common law rule is not to destroy the

jurisdiction of either court. It only requires in the interest of the orderly administration of justice, that the court first acquiring jurisdiction should ordinarily be permitted to finally adjudicate the case. The distinction sought to be made is aptly stated in *State ex rel. Keeney v. Bland,* 89 W. Va. 600, 109 S. E. 716, 718, as follows:

"In all such cases, there is complete jurisdiction of both subject-matter and person, in both courts, until that of one of them is ousted by a plea in abatement or a plea of *res judicata.* A cause of action concurrently cognizable by two courts belongs to the jurisdiction of the one in which it is first brought, and is excluded from that of the other, only in a potential sense, not actually. The law confers upon the parties the right to confine it to the former and exclude it from the latter by proper procedure. This is the sense in which the observation respecting this subject, so often found in the books, must be taken."

Where two courts have concurrent jurisdiction of a criminal offense, the State has the right to elect the forum in which it will proceed. The defendant has no vested right to be tried in either of the jurisdictions, but he may not be tried in both. In most jurisdictions it is held that if the state undertakes a trial in the court last acquiring jurisdiction, the remedy of the defendant is to enter a plea in abatement or other appropriate plea requiring the state to proceed in the jurisdiction first selected. But if no such plea is made at the first opportunity, that defense is lost. It was said by the Supreme Court of Appeals of West Virgina in *State v. Bland, supra:*

"The defense is a personal privilege allowed the defendant, rather than a lack of power in the court; wherefore, upon his waiver of it, by failure to set it up by plea, filed at rules, the court may proceed to hear and determine the case. The rule by which a plea of another suit pending abates the one in which it is filed and sustained has, for its object,

mere prevention of unnecessary vexation of a party by two or more suits upon the same cause of action.

* * *

"It does not follow, however, that a defendant must submit to two judgments for the same cause of action. He may waive or lose his right to have the second suit abated by reason of the pendency of the first, and yet prevent two judgments, by pleading the judgment first rendered in bar of further prosecution of the other action, in which judgment has not been recovered. Both suits may be prosecuted and defended, each as if the other were not pending; but the moment judgment is rendered in one of them, for their plaintiff or defendant, it is a weapon in the hands of the defendant with which, by pleading it, he may defeat the other action. Here, again, is a demonstration of the unsoundness of the proposition that attachment of the jurisdiction of one of two courts of concurrent jurisdiction deprives the other of its jurisdiction. The jurisdiction of the other continues, subject to power in the defendant to defeat it by proper procedure in the case and at its bar, but not otherwise."

In *State v. Van Ness,* 109 Vt. 392, 199 A. 759, 762, 117 A. L. R. 415, the Court, in discussing the rule that where two or more courts have concurrent jurisdiction of any criminal offense, the court which first acquires jurisdiction retains same to the exclusion of all other courts, said: "the rule is one that a respondent may waive, and he does waive it unless he asserts his rights under it at his first opportunity and before he submits to the jurisdiction of the second court. * * * Though it is here spoken of as a plea to the jurisdiction, the special plea is in essence a plea in abatement. It does not deny the jurisdiction of the county court to try that class of cases to which this belongs, but it sets up external matters which, it is alleged, afford a sufficient reason why that jurisdiction should not be exercised in this case."

In *State v. Tisdale,* 19 N. C. 159, a bill of indictment for an assault and battery was found in the Superior Court against a person who was subsequently, but before being taken to answer the charge in the Superior Court, indicted and convicted in the County Court for the same offense. To the indictment in the Superior Court, the defendant interposed a plea of *autrefois convict.* It was held that the County Court had jurisdiction of the case, notwithstanding the bill found in the Superior Court, and to that bill the defendant might plead his former conviction in the County Court.

In reaching this conclusion, Chief Justice Ruffin said:

"It is not denied, on the part of the state, that a former conviction is generally a bar to another indictment for the same offense. But it is said, that it is not a bar, unless the court which gave the judgment had jurisdiction; and that in this case, the County Court had none, because it attached upon the finding of the bill, in the Superior Court, and necessarily ousted that of the former court.

\*  \*  \*

"The State may prefer a prosecution in any of her courts, which have jurisdiction, and may, in general, try the party on which she pleases. If two indictments be found in the same court, the course is to quash one before the party is put to plead on the other. If in different courts, neither court can be said to be ousted of its jurisdiction of the offense; though the defendant may have it in his power to abate the latter bill by plea, that another court has cognizance of the case by a prior bill. It is like the case of a second civil action brought, pending a former; which is not a matter of abatement of the first, but is a good plea of that kind in the second. Yet if it be not pleaded in abatement, and a judgment be taken in the second suit, there can be no doubt that such judgment might be pleaded, since the last continuance, in bar of the further prosecution of the action first brought. This is not therefore a case of a total want of jurisdiction, but of a privilege to the defendant to object

to being tried on a second indictment, either in the same or another court, until the first be disposed of; and like other privileges, it may be waived."

It is true that the plea in the above case was one of *autrefois convict* but the same principle was applied in *State v. Bowers,* 94 N. C. 910, involving a plea of *autrefois acquit.*

In *State v. Williford,* 91 N. C. 529, the Court said: "When the jurisdiction is concurrent, it would seem that either court may take jurisdiction, and when no objection by plea in abatement is made to the jurisdiction, it may proceed to judgment; and such judgment may be pleaded in bar of the prosecution in the other court."

Of course, "A verdict of acquittal procured by accused by fraud and collusion is a nullity and does not put him in jeopardy; and consequently it is no bar to a second trial for the same offense." 22 C. J. .S., Criminal Law, § 245. Also, see 15 Am. Jur., Criminal Law, Section 377; *State v. Dockery,* 171 N. C. 828, 89 S. E. 36. This principle has been applied where an accused inflicts upon another a mortal wound in one county from which death follows in another county and thereafter by collusion and fraud seeks to choose the county in which he shall be tried. *Spencer v. Commonwealth,* 194 Ky. 699, 240 S. W. 750; *Clemons v. Stoll,* 197 Ky. 208, 246 S. W. 810. However, we are not called upon to consider this question for, as previously stated, there is no claim in the instant case of collusion or fraud.

Turning now to the decisions in this jurisdiction, appellant's contention that the Court of General Sessions of Dorcester County had jurisdiction is fully sustained by the case of *State v. Messervey,* 105 S. C. 254, 89 S. E. 662, 663. The defendant in that case, on July 6, 1909, in Colleton County, shot one J. D. Altman who thereafter died from said wound in Charleston County. During the same year he was indicted in Colleton County for murder but was not tried because he was serving a sentence for manslaughter in an-

other case. After being released from the penitentiary in 1915, he was immediately arrested on a bench warrant issued by the Court of General Sessions of Colleton County and lodged in the Charleston County jail to await trial of the action pending against him in Colleton County. While being so held, he was indicted by the grand jury of Charleston County for the murder of Altman. He entered a plea in abatement to the indictment in Charleston County upon the ground that the Court was without jurisdiction to try him while the indictment was pending in Colleton County for the same offense. This plea was overruled and the defendant forced to trial, resulting in a conviction of manslaughter. The defendant appealed and the judgment was affirmed. Among other questions raised, it was contended that the Court of General Sessions of Charleston County was without jurisdiction to try the case and that in no event could the defendant be tried in Charleston County until the case in Colleton County had been nol prossed or otherwise terminated. In overruling both of these contentions, the Court held that the defendant was subject to trial in either county and that if he "wanted protection from an indictment in Colleton, he now has it, in former jeopardy."

The conclusion in the *Messervey case* that the Court of General Sessions of Charleston County had jurisdiction is eminently sound and is in accord with the authorities in other jurisdictions which we have reviewed. It is unnecessary for us to discuss the action of the Court in the *Messervey case* in overruling the defendant's plea in abatement since in the instant case there was no such plea.

The Attorney General says that the *Messervey case* cannot be reconciled with the later case of *State v. Swygert,* 117 S. C. 94, 108 S. E. 261, which he says had the effect of overruling the *Messervey case*. In the *Swygert case*, the defendant, on April 3, 1921, in Lexington County, mortally wounded one J. C. Nicholson, who died the next day in Richland County. A coroner's inquest was promptly held in

Lexington County and the defendant was arrested and lodged in the Lexington County jail. On April 12, 1921, he was admitted to bail by a Justice of this Court and on the following day filed bond, conditioned upon his appearance before the Lexington County court to answer any bill of indictment preferred against him. On May 23, 1921, the grand jury of Lexington County requested the solicitor in a presentment to hand out a bill of indictment against the defendant. He declined to do so, stating that the Attorney General had directed that the defendant be indicted in Richland County where the deceased died. A few weeks later the defendant was indicted by the grand jury of Richland County and was thereafter arrested on a bench warrant from that court and lodged in the Richland County jail. He petitioned for a writ of habeas corpus in the orginal jurisdiction of this Court, asking for his discharge from the custody of the Sheriff of Richland County and from the jurisdiction of the Court of General Sessions of that county. It was held by this Court that the Court of Lexington County had assumed "exclusive jurisdiction of the case", and that the entire proceedings by which it was sought to arrest the defendant and hold him to trial in Richland County should be annulled.

The Court's action in the *Swygert case* is in accord with the general rule that where two courts have concurrent jurisdiction of a criminal offense, the court which first acquires jurisdiction should ordinarily be permitted to retain custody of the case and proceed with final determination of it. It was entirely proper in the *Swygert case* to require the State to proceed with the prosecution in the county where it was commenced. But we do not think the opinion in that case can soundly be construed as holding that there was an entire want of jurisdiction in the Court of General Sessions of Richland County.

In every criminal prosecution, the State is the actor. In the instant case, the State had the choice of trying appellant

in either Dorchester or Colleton County. It did not have the right to try him in both. It chose to initiate the prosecution in Colleton County and having done so, no good reason appears in this record why the case should not have been prosecuted to a final conclusion in the court which first acquired jurisdiction. But after an indictment had been pending against appellant in Colleton County for approximately a year and the case had been continued three times on appellant's motion, the State chose to indict and try him in Dorchester County. It is true that the two counties are in different circuits with different solicitors, but the power of neither solicitor exceeded that of the other. Each had authority to act for the State of South Carolina. Appellant under the *Swygert case* could have objected to a trial in Dorchester County as long as the proceeding against him in Colleton County was pending. But this was a privilege which he could waive. This he did. The Court in Dorchester County had jurisdiction. Apparently, that court under the circumstances should not have assumed jurisdiction, but it has often been said that jurisdiction to decide involves the power to decide wrongly or erroneously. Appellant having been tried and acquitted in a court having jurisdiction, he cannot be tried for the same offense again.

In reaching the conclusion that appellant's plea of ■ *autrefois acquit* should be sustained, we are certainly not to be understood as condoning the unusual procedure had in this case. Notwithstanding the fact that there is no charge by the State of collusion or fraud, in the interest of public confidence in our courts and in fairness to those engaged in the prosecution and defense of the case, the considerations leading to the indictment and trial of appellant in Dorchester County should have been stated. For unexplained, the record before us presents a rather unseemly situation.

The matter of estreating appellant's bond for failure to appear at the April, 1950, term of the Court of General

Sessions for Colleton County is not involved on this appeal and is left open for future determination.

The order appealed from is reversed and the case is remanded for entry of judgment sustaining appellant's plea of *autrefois acquit.*

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.