Frank THEODORE, Appellant,

v.

STATE of Alaska, Appellee.

No. 550.

Supreme Court of Alaska.

Oct. 28, 1965.

---

Peter J. Kalamarides, Anchorage, for appellant.

Warren C. Colver, Atty. Gen., Juneau, Dorothy Awes Haaland, Asst. Atty. Gen., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

The question before us is whether the superior court was obligated or required to dismiss the information before it upon a showing that a district magistrate court had already assumed jurisdiction of a complaint containing identical charges, had accepted pleas and on at least two occasions had calendared the issues for trial.

Appellant was charged with violations of commercial fishing regulations in a complaint filed in the District Magistrate Court in Cordova, Alaska, in August of 1963. Not guilty pleas were entered and thereafter several trial continuances were granted. Approximately one year later, in August of 1964, a two count information was filed against appellant in the Superior Court for the Third Judicial District charging the same violations as those charged in the complaint still pending and untried in the magistrate court.

On the day set for arraignment and trial before the superior court, which was sit-

ting in Cordova on its annual visit, appellant moved to dismiss the information on the ground that the magistrate court "* * * had already taken jurisdiction and had acted. * * *" The motion was denied by Judge Edward V. Davis. Appellant was then granted a further trial continuance upon his agreement to stand trial before the superior court in Anchorage in September of 1964.

After trial by jury in the superior court in Anchorage, Judge Hubert A. Gilbert presiding, appellant was found guilty on Count II and sentenced to six months imprisonment, which was suspended, and fined $4000.

Appellant contends that the facts of this case are controlled by the rule that the court of competent jurisdiction which first assumes control of an action which could be heard in separate courts of concurrent jurisdiction, retains exclusive control of the action, subject only to appellate authority,

1. Rogers v. Bonnett, 2 Okl. 553, 37 P. 1078 (1894) which defined "concurrent" while holding that the probate court had concurrent authority with the district court; Reconstruction Finance Corporation v. Zimmerman, 76 F.2d 313 (4th Cir. 1935), involving a conflict between state and federal courts; and Browne v. Superior Court, 95 P.2d 178 (Dist.Ct.App. Cal.1939), conflict between two superior courts over the custody and care of an incompetent where the order requested of the San Francisco Superior Court in a habeas corpus proceeding would have violated the order of the Santa Barbara Superior Court which had jurisdiction of the person and estate of the incompetent.

2. Art. IV, Sec. 1, Alaska Constitution, in pertinent part states:
* * * The courts shall constitute a unified judicial system for operation and administration. * * *
In furtherance of the above constitutional requirement, the legislature has enacted:
AS 22.10.130 which provides that the chief justice shall appoint a presiding superior court judge for each judicial district who shall supervise the judges and court personnel, assign cases to judges and expedite and keep current the court business for the district.
AS 22.15.170 providing that the presiding judge of the superior court for

and that it was error for the superior court not to grant his motion to dismiss. Appellant's brief cites three examples of application of the rule in civil actions,[1] although it has been applied by many courts in criminal actions.

Since this is the first case in which we have been asked to apply the rule to Alaska courts, we have examined its origin with some care to determine whether it has a meaningful application to the unified court system established by our Alaska Constitution and statutes.[2]

The doctrine first appears in early decisions of the United States Supreme Court in civil cases involving conflicts between federal and state courts where goods, chattels and lands were under attachment. In Peck v. Jenness,[3] one of the earliest pronouncements is found, with the court saying:

It is a doctrine of law too long established to require a citation of au-

each judicial district shall appoint the district and deputy magistrates who shall serve at the appointing judge's pleasure.
AS 22.15.190 which provides that district and deputy magistrates shall hold court at the times and places as directed by the presiding judge, who may assign them as court business requires.
Rule 38, Rules Governing the Administration of All Courts, promulgated by the Supreme Court, provides that presiding district magistrates shall be appointed by presiding superior court judges.
Rule 39, Rules Governing the Administration of All Courts, provides that presiding superior court judges appoint traveling district magistrates for their districts; that such traveling district magistrates shall visit deputy magistrate courts in the district as often as required to try accumulated cases beyond the jurisdiction or ability of deputy magistrates; that they keep themselves and the presiding superior court judge informed of the status of calendars in all magistrate courts and that they act as master for any superior court judge when required in order to expedite the efficient handling of judicial matters in outlying areas.

3. 7 How. 612, 624, 48 U.S. 612, 624, 12 L. Ed. 841, 846 (1849).

thorities * * * that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. * * *

The doctrine was recognized and re-iterated in Freeman v. Howe.[4] In Covell v. Heyman[5] the court said, with respect to the nature of the doctrine:

> The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity with perhaps no higher sanction than the utility which comes from concord; * * *.

Ex parte Johnson[6] may perhaps be one of the first instances of where the rule was extended by a federal court to apply in a criminal case. It was there stated:

> We know of no reason why the rule, so frequently applied in cases of conflicting jurisdiction between federal and state courts, should not determine this question. (which of two federal district courts should prosecute a crime alleged to have been committed in Indian territory) Ever since the case of Ableman v. Booth, 21 How. 506, [16 L.Ed. 169,] it has been the settled doctrine of this court that a court having possession of a person or property cannot be deprived of the right to deal with such person or property until its jurisdiction is exhausted, and that no other court has the right to interfere with such custody or possession.

In Beavers v. Haubert,[7] the accused was held in the custody of one federal district court awaiting trial of indictments there pending. It was held on appeal that prosecution of proceedings to remove accused to another federal district for trial was not an unlawful interference with the court of custody, where the proceedings were had with the consent of that court. To the same effect was the holding in Price v. Henkel.[8]

An early application of the doctrine in a state court in a criminal case is reported in Ex parte Baldwin,[9] where the accused was indicted for the same offense by the grand juries of two different counties. The court said:

> It is plain that the court of both counties cannot exercise jurisdiction by trials and judgments in the case, for the obvious reason that if they may, defendant may be subjected to two trials and two punishments for the same offense. How shall it be determined in which county trial and punishment shall be had? The answer is ready and simple, and discloses a rule which, while securing the punishment of criminals, will assure the accused exemption from two trials and double punishment. It is this: The court first obtaining jurisdiction of the person of the accused shall retain it to the exclusion of the court of the other county, and shall proceed to try the case and administer justice therein.

In State v. Howell,[10] defendant was tried and acquitted of the crime of murder in Colleton County although an indictment for the offense had first been returned in Dor-

4. 24 How. 450, 455, 65 U.S. 450, 455, 16 L.Ed. 749, 751 (1860).

5. 111 U.S. 176, 182, 4 S.Ct. 355, 358, 28 L.Ed. 390, 392 (1884).

6. 167 U.S. 120, 125, 17 S.Ct. 735, 737, 42 L.Ed. 103, 104 (1897).

7. 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1905).

8. 216 U.S. 488, 30 S.Ct. 257, 54 L.Ed. 581 (1910).

9. 69 Iowa 502, 29 N.W. 428, 429 (1886).

10. 220 S.C. 178, 66 S.E.2d 701, 708 (1951).

chester County. The court affirmed its adherence to the general rule, was critical of the procedure followed, but sustained the plea of former acquittal. In State v. Brannon,[11] while defendant was charged with bootlegging in the district court, he demanded and received an immediate trial on the same charge in the justice court where the case was dismissed. His later conviction in the district court was upheld on appeal on the ground that since the district court had first acquired jurisdiction the justice court could not.

Analysis of the authorities seems to establish that the rule probably had its origin in conflicts between federal and state courts in civil cases and that while it has had a wide application in federal and state courts in civil cases, its application in criminal cases has probably been more limited.[12]

Its application in criminal cases is not based on any constitutional right of the accused. In Beavers v. Haubert,[13] it was recognized that a defendant has a constitutional right to a speedy trial by a jury of the district where the offense was alleged to have been committed, but it was held that he does not have an unqualified right to be tried by the court in which the first accusation is made.[14]

The rule is a practical one which has developed out of the necessity of preventing irreconcilable conflict between courts of concurrent jurisdiction. It is a rule of comity and courtesy rather than of prohibition [15] and has served as the practical means of resolving actual conflicts where each court was earnestly asserting its right to exercise its jurisdiction to the exclusion of the other. "Interference" is the word commonly used in appellate opinions to describe the proceedings of one or the other of the courts in conflict. On the other hand, where the court first acquiring jurisdiction consented to the exercise of jurisdiction by another court of concurrent jurisdiction, appellate courts seem invariably to have approved.[16] Application of the rule is at all times subject to the interests of public justice [17] and does not abridge the right of the state to elect where a prosecution shall be commenced or tried.[18]

With the foregoing in mind, the question is whether the facts of the case before us require application of the rule in the interests of justice.

We think not. Almost none of the basic fact situations which created the necessity for the rule are present here. While it is true that appellant stood charged with the same offenses in two different courts of concurrent jurisdiction,[19] the similarity of this case with cited precedent ended

11. 6 Kan.App. 765, 50 P. 986 (1897).

12. State v. Bell, 21 Conn.Sup. 246, 154 A. 2d 142 (1959); Peckham v. Henkel, 216 U.S. 483, 486, 30 S.Ct. 255, 54 L.Ed. 579 (1910).

13. Supra, note 7.

14. See also: State v. Howell, supra, note 10; State v. Bell, supra, note 12.

15. Covell v. Heyman, supra, p. 185; State v. Bell, supra, note 12.

16. Beavers v. Haubert, supra, note 7; See Sigmon v. Commonwealth, 200 Va. 258, 105 S.E.2d 171 (1958).

17. Beavers v. Haubert, supra, note 7.

18. State v. Howell, supra, note 10; State v. Persons, 117 Vt. 556, 96 A.2d 818

(1953); Ex parte Baldwin, supra, note 9. Apparently contra: Coleman v. State, 83 Miss. 290, 35 So. 937, 64 L.R.A. 807 (1904).

19. AS 22.10.020 states in pertinent part: *Jurisdiction.* (a) The superior court is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters, * * *.
AS 22.15.060 states in pertinent part: *Criminal jurisdiction.* (a) The district magistrate court has jurisdiction of the following crimes:
* * * * *
(b) Insofar as the criminal jurisdiction of the district magistrate courts and the superior court is the same, such jurisdiction is concurrent.

there. The superior and magistrate courts were not attempting simultaneously to assert their right to proceed with prosecution, so that the accused was faced with the immediate prospect of having to stand trial in two different courts for the same offense. The opposite was the case. Only the superior court was attempting at the time of appellant's motion to try the accusations and for the stated purpose of providing a speedy trial for the accused.

The organization of the unified Alaska Court System provided for a resident deputy magistrate at Cordova who was not empowered to try misdemeanors, other than violations of city ordinances, except with the consent of the accused.[20] Regardless of consent, however, the established practice was to reserve the more serious misdemeanors for trial before a traveling district magistrate from Anchorage who visited Cordova at regular intervals. At least two previous trial settings before the traveling magistrate had been vacated and continuances granted. The case could not have been tried in the ordinary course of events until a district magistrate again visited Cordova, except that the annual visit of a superior court judge to Cordova presented an opportunity to have appellant's charges tried before that court.[21] Filing the information in the superior court permitted trial of the year old charges in appellant's home city without further delay. The judge remarked on two different occasions during the hearing on appellant's motion that the parties were entitled to a prompt trial which they had not had.

In support of his motion to dismiss the information in the superior court, appellant stated to the court:

> * * * Now, I feel that since the Magistrate's Court had taken positive action in this matter that perhaps the Superior Court should leave it right there and the matter can be heard and tried there. Our strategy is entirely different in the Magistrate's Court than it would be in the Superior Court because in the Magistrate's Court the jury is the judge of both the law and the facts, and obviously we can argue law to the jury. * * * Another factor would be that from the Magistrate's Court we have two levels of appeal in the event that there is a conviction whereas in the Superior Court we have one level. Now, the reason I point this out to Your Honor is that it's a well known fact that Superior Court Judges do not err as often or as much as do the lower Court of the Magistrates.[22]

After appellant had requested an additional continuance on the ground that one of the defendants had not been served and was not available for trial and was relied upon by appellant as a witness, the judge remarked:

> It may very well be that under the circumstances existing that if I do grant a continuance that maybe they could go ahead with the Magistrate's case, but I think that the matter should be disposed of promptly and if we don't do it and it's going to be handled here in the Magistrate's Court I think we ought to send a Magistrate over here and take care of it. I don't think it's going to do anybody any good to leave it until next year.

This reinforces our belief that the court was primarily concerned with observing appellant's constitutional right to a speedy

---

20. AS 22.15.120(6).

21. The supervisory authority and responsibility of the presiding superior court judge over all of the magistrate courts in his judicial district required that he be aware of calendaring problems and that, when necessary or expedient, he assist district magistrates in this respect in the same manner that they are required to assist deputy magistrates. See note 2, supra.

22. It would seem that under this reasoning appellant would have approved trial of the charges before the court of least error in the first instance rather than oppose it.

trial and of clearing the Cordova magistrate criminal calendar for which he, as presiding judge, had ultimate responsibility under Rule of Administration No. 39.[23]

The requested continuance was finally granted on the condition that appellant agree to stand trial before the superior court in Anchorage. After consulting with his client, counsel for appellant so stipulated.

The state argues that appellant's agreement to stand trial in the superior court in Anchorage was a waiver of his privilege to have the charges tried in the magistrate's court. Since we are holding that appellant did not have an unqualified right or privilege to be tried by the district magistrate court, the question of waiver becomes moot.[24]

We are of the present belief that no need exists for establishing the rule in Alaska. Certainly the facts of this case do not call for its application in the interests of justice. Unlike the situations pointed up by the authorities just reviewed, appellant was not being oppressed by a conflict between contending courts, or by elected and independent county attorneys or county sheriffs, only remotely accountable to a superior authority.

Nor do we consider it likely that oppression of the sort exemplified by the authorities reviewed herein will occur in Alaska in the future. The courts of the unified court system are tied together so intimately by interlocking and overlapping authority and responsibility that the likelihood that any particular court could long countenance oppression of an accused is remote. The checks and balances provided by the legislature and by court rule seem entirely sufficient to prevent this.

The likelihood that the district attorneys of the various judicial districts could long insist on maintaining simultaneous prosecutions of an accused in the manner that county prosecutors frequently do in other jurisdictions seems remote. All district attorneys in Alaska are appointed by the Attorney General and serve at his pleasure. All felonies and all misdemeanors, with the occasional exception of violations of municipal and borough ordinances, are prosecuted by state district attorneys. All accusations are tried before appointed judges and magistrates of the Alaska Court System.

There are no elected sheriffs or police authorities who could initiate simultaneous prosecutions. All state police and enforcement officers are employed by and removable by commissioners serving at the pleasure of the Governor.

Of the authorities reviewed, State v. Josephs,[25] decided by the Appellate Division of the Superior Court of New Jersey in 1963, is the closest to the facts of the case before us and represents the view of a court of a unified court system. It was there held that the rule that a matter must be tried in the court first obtaining jurisdiction without regard to the subsequent attachment of jurisdiction in another court did not prevail in New Jersey and that the prosecutor had wide discretion as to which courts of concurrent jurisdiction he would employ in a given case.

Our dissenting colleague feels that our conception of the area of useful application of the rule is too restricted and that the

23. Note 2, supra.

24. In his reply brief appellant cites In re Duty, Okl.Cr., 318 P.2d 900 (1957) in support of his argument that the magistrate court had jurisdiction of the offense or subject matter to the exclusion of the superior court. On the other hand, authorities have held that the court last to initiate prosecution but first to arrest and arraign the accused has exclusive jurisdiction from that point onward, Ex parte Baldwin, supra, note 9; But see State v. Howell, supra, note 10 where the court first to initiate prosecution had arrested the accused and released him on bail but the subsequent indictment, arrest, trial and acquittal by another court was upheld.

25. 79 N.J.Super. 411, 191 A.2d 775, 778 (1963).

safeguards upon which we rely to prevent future abuses may prove to be illusory. Should this prove to be the case the rule can always be applied to prevent injustice. All we are holding is that its application in the interests of justice is not called for in the present case.

Appellant's next point is that the regulation under which he was convicted of a fishing violation in Beartrap Bay in Prince William Sound was based on an area description so vague and ambiguous that it could be construed as placing that bay in the Copper River-Bering River area rather than in the Prince William Sound area where different fishing regulations would be applicable.

Sec. 111.02 of the Alaska Fish and Game Regulations states:

Definition, area.

The Prince William Sound area includes all waters of Alaska between Cape Fairfield (148° 50′ W. long.) and Hook Point (146° 15′ W. long.) and a line from Boswell Rock to the radio towers at Whiteshed village, excluding Boswell Bay.

Sec. 112.02 of the same regulations states:

Copper River-Bering River area includes all waters of Alaska between Hook Point (146° 15′ W. long.) and a line from Boswell Rocks [sic] to the radio towers at Whiteshed village, to Cape Suckling (143° 55′ W. long.), including Boswell Bay.

Appellant's argument is that if a parallel were extended northward on a chart along the line of 146° 15′ west longitude, it would pass to the westward of Beartrap Bay, thus placing that bay in the Copper River-Bering River area rather than in the Prince William Sound area where the state contended it was located.

This argument seems to assume that Hook Point and longitude 146° 15′ are the terminus point of the definition of the Prince William Sound area and the point of beginning of the Copper River-Bering River area and disregards the language "and a line from Boswell Rock to the radio towers at Whiteshed village" included in both definitions. No reasonable explanation has been given by appellant for disregarding this portion of the description and none has been discovered by the court.

If the description of the Prince William Sound area is read and concurrently projected on a chart it is clear that the state used prominent points on land to describe the "waters of Alaska" intended to be included within a given area.

Those intended to be included within the Prince William Sound area were "all waters of Alaska *between*" (emphasis supplied) Cape Fairfield on the mainland and Hook Point on the southeastern shore of Hinchinbrook Island. The description does not end at Hook Point, but commences again at Boswell Rock, located on a point on the eastern shore of the same island. The description then continues and "includes all waters of Alaska" within a line extended between Boswell Rock and the radio towers at Whiteshed village on the mainland. The description evidences an overall intent to include all "waters of Alaska" to the north and west of the line and located in Prince William Sound. Boswell Bay is specifically excluded. All "waters of Alaska" *"between"* Hook Point and the line from Boswell Rock to Whiteshed and Cape Suckling, to the southeastward, are obviously intended to be included within the Copper River-Bering River area, specifically including Boswell Bay.

 We agree with appellant that a vague, imprecise, indefinite or ambiguous regulation, the breach of which carries a criminal penalty, should be strictly construed in favor of the accused. However, we believe that a common sense, unstrained, reading of both descriptions provides a reasonably concise description of the areas and leaves no room for the argument advanced by appellant.[26]

26. State v. Di Paglia, 247 Iowa 79, 71 N.W. 2d 601, 604, 49 A.L.R.2d 1223 (1955), Amsel v. Brooks, 141 Conn. 288, 106 A.2d 152, 157, 45 A.L.R.2d 1234 (1954).

Appellant next contends that the information does not state a crime and that his conviction should be set aside.

The reasoning supporting this argument is that accused was charged under AS 16.05.920 as implemented by Title 5, Sec. 111.21(t), Alaska Administrative Code of 1963; that AS 16.05.920 provides for the promulgation only of regulations making certain acts *lawful,* and that Title 5, Sec. 111.21(t) is a regulation making it *unlawful* to fish within 1000 yards of the terminus of the stream at the head of Beartrap Bay.

We find no grounds for reversing the conviction in this argument. As appellant points out elsewhere in his brief, AS 16.05.250 gives the Board of Fish and Game authority to make rules and regulations governing commercial fishing. The authority of the Board and the validity of the regulation here involved are not questioned. Even if it were conceded that the information should have cited AS 16.05.250 instead of AS 16.05.920, reversible error was not committed unless the defendant was misled to his prejudice.[27]

■ Since appellant has made no attempt to show wherein he was prejudiced by the claimed error, we shall assume that none resulted.[28]

The last point to be considered is appellant's claim that the regulation which he was convicted of violating was a prohibitory one and could not have been promulgated under AS 16.05.920; that the words "as implemented by" in the information are words of description and not words of accusation, therefore the regulation must be ignored and the case treated as though appellant had been charged and convicted of a violation of AS 16.05.920. The maximum fine for a violation of this statute is $1000 under the provisions of AS 16.05.900(a). Appellant argues therefore, that if he is to be fined the amount must be reduced to $1000.

The state points out that appellant's $4000 fine was imposed under AS 16.05.720(a) which provides that violation of the rules and regulations of the department (Fish and Game) is a misdemeanor punishable by a fine of not more than $5000 or imprisonment for not more than one year, or both; that AS 16.05.900(a) is limited by its terms to noncommercial fishing and also by its terms provides that one who violates a commercial fishing rule or regulation shall be punished under AS 16.05.720(a).

■ Appellant was clearly and unambiguously charged in Count II with unlawful commercial fishing in Beartrap Bay by fishing within 1000 yards of the terminus of the stream at the head of Beartrap Bay. He could not have been misled to his prejudice as to the nature of the charge he was required to defend. The proper regulation was cited in the information. The fact that the wrong statute may have been cited creates no ground for reversible error in this case as we have already pointed out. Since the violation was of a commercial fishing regulation the fine imposed was governed by AS 16.05.720(a) and was not excessive.

Finding no error, the judgment below is affirmed.

---

27. Rule 7(c) Rules of Criminal Procedure states in part:

> * * * The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice. ·

28. Worthy v. United States, 328 F.2d 386, 391 (5th Cir. 1964); Abramson v. United States, 326 F.2d 565, 567 (5th Cir. 1964), cert. denied, 377 U.S. 957, 84 S.Ct. 1636, 12 L.Ed.2d 500; United States v. Galgano, 281 F.2d 908, 911 (2d Cir. 1960), cert. denied, Carminati v. United States, 366 U.S. 960, 81 S.Ct. 1916, 6 L.Ed.2d 1253, cert. denied, 366 U.S. 967, 81 S.Ct. 1929, 6 L.Ed.2d 1257; See Zerbinos v. Lewis, 394 P.2d 886, 890 (Alaska 1964), Briggs v. Kelly, 376 P.2d 715, 717 (Alaska 1962).

RABINOWITZ, Justice (dissenting in part).

In this appeal the State concedes that "where two courts have concurrent jurisdiction of the same offense, the court which first acquires jurisdiction of the prosecution normally retains it to the exclusion of the other court as long as it is pending in that court." [1] A majority of this court has decided that application, or adoption, of this rule under the facts of this appeal is not necessary in the interest of justice. I disagree with the majority's conclusion.

After recognizing that the appellant stood charged with the same offenses in two different courts of concurrent jurisdiction, the majority then concludes that the factual circumstances of this case do not warrant adoption of the rule. Apparently under the test articulated by the majority, the rule's applicability is to be limited solely to the situation where both the superior and magistrate courts are "attempting simultaneously to assert their right to proceed with prosecution, so that the accused was faced with the immediate prospect of having to stand in two different courts for the same offense." Admittedly the majority also relies upon the safeguards arising from the unified structure of Alaska's court system and the Attorney General's overall supervision of appointive prosecutors, as well as the unlikelihood of harrassment occurring in the future, in reaching its conclusion that the rule should not be adopted or applied in this case.

In my opinion the majority's conception of the circumstances under which the rule should be applied is too restrictive and reliance upon the integrated features of our court system and the overall supervisory control of prosecutions by the Attorney General might well prove to be illusory from the accused's point of view.

The underlying rationale of the rule was stated in Coleman v. State [2] to be as follows:

> But it is more than a mere rule of procedure. It is a substantial and valuable right guarantied [sic] by the law to a party accused of crime. It insures that he shall not twice be placed in jeopardy for the same offense; that he shall be forced to undergo but one trial, and shall not be harrassed by repeated indictments in different courts and different jurisdictions. [3]

The detrimental impact upon an accused (in both cost of representation and loss of time) arising out of concurrent prosecutions for the same offense is, in my view, the most cogent reason for adoption of the rule. The prejudice of an accused is no less in the situation where he is confronted with the future prospect of defending two separate prosecutions than where he is faced with the immediate prospect of having to defend prosecutions in two different courts for the same offense.

The rule that where courts have concurrent jurisdiction of the same offense the

---

1. As indicated in the majority opinion, the State, although conceding the rule, further contended that appellant waived the right to invoke this rule. In my view nothing which transpired before Judge Davis at the time appellant made his motion to dismiss discloses any waiver on appellant's part of his right to invoke this rule.

2. 83 Miss. 290, 35 So. 937, 939, 64 L.R.A. 807 (1904).

3. In its opinion in Coleman v. State, supra note 2, 35 So. at 939, the court also stated:
 > Section 1334 providing that in all criminal cases, when the courts of different counties have concurrent jurisdiction, jurisdiction shall vest in the courts of that county 'where prosecution shall be first begun,' is simply declaratory of a well-defined and firmly established legal doctrine. It grew out of the comity of nations, and was intended to prevent conficts between courts of concurrent jurisdiction, whether of the same or different counties or countries, and was found necessary to insure the orderly administration of the criminal laws.

court which first obtains jurisdiction of the prosecution retains it to the exclusion of others apparently has vitality in criminal matters, and has been adopted in numerous jurisdictions.[4] Adoption of the rule in this jurisdiction would not result in granting to the accused an unqualified right or privilege to be tried in the court first acquiring jurisdiction. This is made clear in State v. Howell [5] where the court stated:

> Where two courts have concurrent jurisdiction of a criminal offense, the State has the right to elect the forum in which it will proceed. The defendant has no vested right to be tried in either of the jurisdictions, but he may not be tried in both. In most juris-

dictions, it is held that if the state undertakes a trial in the court last acquiring jurisdiction, the remedy of the defendant is to enter a plea in abatement or other appropriate plea requiring the state to proceed in the jurisdiction first selected. But if no such plea is made at the first opportunity, that defense is lost.[6]

Furthermore, if the jurisdiction of the first court having concurrent jurisdiction has come to an end, the rule is not applicable.[7]

In my view adoption of the rule would in no way interfere with the prosecution's choice of the court in which it desires to

---

4. See Harmon v. State, 8 Ala.App. 311, 62 So. 438, 439 (1913), cert. denied, Ex parte Harmon, 185 Ala. 673, 64 So. 1018 (1914); Ex parte Sirmans, 94 Fla. 832, 116 So. 282, 285 (1927); People v. Speece, 367 Ill. 76, 10 N.E.2d 379, 381 (1937), cert. denied, 302 U.S. 659, 58 S.Ct. 410, 82 L.Ed. 509 (1937); Haden v. Dowd, 216 Ind. 281, 23 N.E.2d 676, 677–678 (1939), cert. denied, 309 U.S. 662, 60 S.Ct. 583, 84 L.Ed. 1009 (1940); State v. Spayde, 110 Iowa 726, 80 N.W. 1058, 1059 (1899); State v. Brannon, 6 Kan.App. 765, 50 P. 986, 987 (1897); Moren v. Commonwealth, 116 Ky. 859, 76 S.W. 1090, 1091 (1903); People v. Joseph, 159 N.Y.S.2d 892, 894 (Sup. Ct.1956); State v. Young, 122 Or. 257, 257 P. 806, 808 (1927); State v. Howell, 220 S.C. 178, 66 S.E.2d 701, 705 (1951); State v. Persons, 117 Vt. 556, 96 A.2d 818, 819–820 (1953); Page v. Johnson, 77 W. Va. 467, 87 S.E. 849, 850 (1916); Contra, Bottom v. State, 155 Ark. 113, 244 S.W. 334 (1922).

5. 220 S.C. 178, 66 S.E.2d 701, 705 (1951).

6. See also State v. Van Ness, 109 Vt. 392, 199 A. 759, 117 A.L.R. 415, 419 (1938). The court in Van Ness stated in part:
> Then, too, the rule is one that a respondent may waive, and he does waive it unless he asserts his rights under it at his first opportunity and before he submits to the jurisdiction of the second court. * * * Though it is here spoken of as a plea to the jurisdiction, the special plea is in essence a plea in abatement. It does not deny the jurisdiction of the county court to try that

class of cases to which this belongs, but it sets up external matters which, it is alleged, afford a sufficient reason why that jurisdiction should not be exercised in this case.

Under our Crim.R. 12(a) pleas in abatement are abolished and may now be raised by motion to dismiss under Crim.R. 12(b) (1) which provides:
> Defenses and Objections Which May Be Raised. Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion.

7. State v. Persons, supra note 4, 96 A.2d at 819–820.
Note: Crim.R. 43(a) provides:
> The prosecuting attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

This rule is made applicable to magistrate courts. See Magis.Crim.R. 1. In this case the prosecution should have first obtained leave of the magistrate court to dismiss the complaint against appellant before commencing the second prosecution in the superior court. If this procedure had been followed, the necessity for application of the rule would have been obviated. Although the potential abuse through the use of dismissals is possible, there are numerous instances where a court could properly grant leave to the prosecution to dismiss its complaint, indictment or information.

proceed. On the other hand its adoption would furnish a clear principle for decision whenever the district magistrate court or the superior court are confronted with such concurrent litigation issues.[8]

8. Note: AS 22.15.030(7) (b) provides:
 Insofar as the civil jurisdiction of the district magistrate courts and the superior court is the same, such jurisdiction is concurrent.

For the reasons heretofore stated I am of the opinion that the lower court erred in denying appellant's motion to dismiss. I concur in the majority's disposition of all other issues raised in this appeal.

It is conceivable that a party in a civil suit under the above statute could be faced with the prospect of having to simultaneously defend against the same cause of action in two separate forums.