## GIBBES v. ZIMMERMAN ET AL.

No. 117. Argued November 17, 1933.—Decided December 4, 1933.

*Mr. D. W. Robinson* for appellant.

*Mr. Irvine F. Belser,* with whom *Mr. John M. Daniel,* Attorney General of South Carolina, was on the brief, for appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This appeal brings here for review an order of the Supreme Court of South Carolina prohibiting the further prosecution of a bill in equity seeking the appointment of a receiver for The Central Union Bank. An Act of the General Assembly, approved March 9, 1933, was held to forbid the maintenance of the proceeding. The appellant, who was plaintiff in the suit, asserts that the Act impairs the obligation of contract, in violation of the Constitution of the United States. We cannot consider this contention, since in his pleading the appellant relied solely on the provisions of the state constitution with respect to the obligation of contracts, and made no reference to § 10, of Article 1 of the Federal Constitution; and the Supreme Court, in disposing of the case, did not mention or discuss that section. R.S. §. 709; U.S.C. Tit. 28, § 344; *Chicago & N.W. Ry. Co.* v. *Chicago,* 164 U.S. 454, 457; *Levy* v. *Superior Court,* 167 U.S. 175, 177; *Miller* v. *Cornwall R. Co.,* 168 U.S. 131, 134; *Bowe* v. *Scott,* 233 U.S. 658, 665.

The statute was also assailed below, and is challenged here, as depriving the appellant of the due process guaranteed by the Fourteenth Amendment. A brief statement of the facts is requisite to an understanding of appellant's argument. Prior to March 9, 1933, the statutory provision as to state banks was, in summary, this: A state official, known as a bank examiner, had general supervision of the operation of these institutions. If a bank became embarrassed or insolvent, he might, upon an order of a court, take possession of the assets and business for a period of thirty days, during which time no suits

could be brought against the bank. He might restore the bank to the management of its officers, or, if liquidation were required, apply to a court for the appointment of himself or another as receiver. The affairs of the bank were then to be liquidated by the receiver under the supervision of the court. Stockholders were liable to creditors other than depositors only to the extent of any unpaid balance on their shares; but to depositors, in an amount equal to the face value of their shares. It was the duty of the receiver to demand and collect for the benefit of creditors and depositors the amount due from stockholders, and, if necessary, to sue the stockholders individually and collectively therefor.*

Shortly after the declaration of a banking holiday by the President on March 4, 1933, the Governor of South Carolina issued a proclamation temporarily closing the banks in that State. The General Assembly passed, and on March 9 the Governor approved, an Act suspending for eighteen months legislation then applicable to the conduct and liquidation of banks; vesting in the Governor plenary power over state banks; and empowering him: to extend the time for payment of deposits as the condition of each institution might require; to direct the creation of special trust accounts for receipt of deposits, which should be held separate from other assets and be subject to withdrawal on demand; to determine whether the overhead expenses of any bank exceed its net income, and, if so, to compel it to reduce the expenses or to order immediate liquidation, as might best serve the depositors' interests; and to make all necessary rules and regulations to carry out the intent of the Act. The examiner was prohibited from taking possession of any bank unless authorized so to do by the Governor, and all persons were forbidden, while the Governor remained in control of the banks, to institute any action

---

* Civil Code of South Carolina (1932), §§ 7843, 7844, 7848, 7852, 7854, 7855, 7868.

against a bank, except by the Governor's consent. The Governor was authorized to appoint a board of bank control, with whom he might advise and consult, and to which he might delegate powers under the Act. Pursuant to this legislation, the Governor appointed a board of bank control and promulgated regulations, which provided, *inter alia*, that upon advice of the board he might, where necessary, appoint a conservator for any bank to conserve its assets for the benefit of depositors and creditors, who should possess himself of all books, records and assets, and take all necessary action to preserve the property, " pending further disposition of its business as provided by law." The regulations provided: " Such conservator . . . shall have all the rights, powers and privileges now possessed by or hereafter given Receivers of insolvent state banks. . . . During the time that such conservator . . . shall remain in possession of such bank, the rights of all parties with respect thereto shall, subject to the other provisions of this order, be the same as if a receiver had been appointed therefor." Further regulations dealing with the reopening of solvent banks and reorganization of banks were promulgated, but these are irrelevant to the present case.

The appellee Zimmerman was appointed conservator of The Central Union Bank and entered upon his duties. The appellant, on behalf of himself and other depositors, filed a bill in the common pleas court, averring the bank's insolvency, charging that the Act of March 9 is invalid so far as it purports to prevent appellant and other depositors from prosecuting the suit, and praying the appointment of a receiver who should proceed to enforce the stockholders' statutory liability to depositors. The defendants named were the conservator, the Governor, and the State Treasurer, who was also a member of the board of bank control. The court issued a temporary injunction and a rule on the defendants to show cause.

At this juncture, the defendants in the common pleas court prayed a writ of prohibition from the State Supreme Court, addressed to the appellant and to the judge of the common pleas court, to stay the equity proceeding. The judge made return submitting himself to such order as the Supreme Court should enter. The appellant filed a demurrer and motion to dismiss, and a return denying the validity of the Act of March 9 and the regulations, and asserting that his right to proceed for the collection of stockholders' liability was a vested property right, to be enforced through a receiver, of which he could not lawfully be deprived; that the conservator was engaged in receiving and paying trust cash deposits, and the expense of conducting this branch of the business would deplete assets available for payment of depositors. The writ of prohibition was granted.

Subsequent to the judgment of the State Supreme Court, certain official action occurred of which we may take judicial notice. On May 16, 1933, there was approved an Act of the General Assembly empowering the Governor, whenever he should determine, after advising with the board of bank control, that any bank for which a conservator had been or hereafter might be appointed, was insolvent, or in imminent danger of insolvency, and liquidation was therefore required to protect depositors and creditors, to order liquidation, which should be accomplished by the conservator, who was to have all the powers and be under all the duties of a receiver, and might apply to a court for instructions on questions arising in liquidation. All appointments of conservators theretofore made were ratified and confirmed. On June 22 the Governor issued an order finding The Central Union Bank insolvent, or in imminent danger of insolvency, reciting that he had consulted with the board of bank control and had found that the overhead expense of the bank exceeded its net income, and directing its liquidation.

332

The appellant says the Act of March 9 arbitrarily deprives him of a remedy for the enforcement of stockholders' liability, which remedy was his property, and was taken from him without due process. But although a vested cause of action is property and is protected from arbitrary interference (*Pritchard* v. *Norton,* 106 U.S. 124, 132), the appellant has no property, in the constitutional sense, in any particular form of remedy; all that he is guaranteed by the Fourteenth Amendment is the preservation of his substantial right to redress by some effective procedure. *Iowa Central Ry. Co.* v. *Iowa,* 160 U.S. 389, 393; *Backus* v. *Fort St. Union Depot Co.,* 169 U.S. 557, 571; *Crane* v. *Hahlo,* 258 U.S. 142, 147; *Hardware Dealers Mut. Fire Ins. Co.* v. *Glidden Co.,* 284 U.S. 151, 158.

Under the Act of March 9, and the regulations, the conservator was endowed with all the functions of a receiver, one of which is the enforcement on behalf of depositors of stockholders' excess liability. If under that Act and the regulations power was lacking, the defect was cured by the Act of May 16. Nothing is shown to indicate that the conservator will prosecute the claim against the stockholders in a manner different from that to be pursued under the old law by a receiver, or that the state courts will refuse him process to that end. The Act of March 9, the regulations, and the Act of May 16, do not purport, and, so far as we can perceive, do not operate, to deny the depositors participation in the distribution of assets, or in the benefit of the stockholders' excess liability. It is not alleged that the proceedings of the conservator will impose upon creditors of the bank greater burden or expense than would have been the case if a receiver were functioning. The substantive rights existing under the old law are preserved. In no proper sense can it be said that any property of the appellant has been taken, injured or destroyed.

The appellant, however, insists that, after the conservator took possession, he accepted special trust deposits, which were segregated and against which the depositors were allowed to draw, and in conducting this restricted business the overhead expenses of the institution exceeded its net income. So long as this condition existed, he says his position as a creditor was being jeopardized, for the fund to which he must look for payment was being depleted. But he has not averred that the conservator's activities will deplete the bank's resources to such extent that depositors cannot be paid in full; and whatever injury might have been inflicted by a continuation of the business has now been abated for the future by the Governor's order of June 22 directing liquidation. No present advantage could accrue to the appellant from the ousting of the conservator and the appointment of a receiver, who could only liquidate by the methods obligatory on the conservator. In this aspect the case is now moot.

The judgment is

*Affirmed.*