**RECONSTRUCTION FINANCE CORPORA-TION v. ZIMMERMAN et al.**

**No. 3748.**

Circuit Court of Appeals, Fourth Circuit.

April 2, 1935.

P. C. Whitlock, of Charlotte, N. C., and Russell L. Snodgrass (W. C. McLain, of Columbia, S. C., on the brief), for appellant and cross-appellee.

Irvine F. Belser, of Columbia, S. C. (Melton & Belser and J. E. Belser, all of Columbia, S. C., on the brief), for appellees and cross-appellants.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a suit in equity brought in the District Court of the United States for the Eastern District of South Carolina, on May 16, 1934, by the appellant and cross-appellee, hereinafter referred to as the plaintiff, against the appellees and cross-appellants, hereinafter referred to as the defendants.

Plaintiff is a corporation organized and existing under an act of Congress of the United States, having its principal office and place of business in the city of Washington, and the United States of America is the owner of more than one-half of its capital stock. The defendants are citizens of the state of South Carolina, one of them being a citizen and resident of the Eastern judicial district and the other a citizen and resident of the Western judicial district of said state. The defendants were duly appointed conservators, acting as receivers, for the Central Union Bank of South Carolina, under and by virtue of the statute law of said state. The Central Union Bank of South Carolina, a state bank, went into liquidation on June 20, 1933, and on that date was indebted to the plaintiff in the amount of $963,421.36. The debt of the plaintiff was secured by certain collateral, the appraised value of which, on November 1, 1933, was $1,376,749.63, and which was reappraised as of March 24, 1934, at $1,378,996.28.

On June 26, 1933, defendant Zimmerman, at that time the only conservator appointed, instituted a suit in the court of common pleas for the county of Richland, S. C., a court of general jurisdiction, against the Central Union Bank of South Carolina and others asking the court for directions as to certain matters connected with the liquidation of the failed bank and also asking that all creditors and claimants be called in to establish their claims and that they be enjoined and restrained from bringing any action or proceeding against said bank or its assets save by proceedings in that suit.

On June 30, 1933, the judge of the said court of common pleas entered an order giving directions to the defendant Zimmerman, acting as receiver, as to certain matters connected with the failed bank and ordered that all of the depositors and creditors of the said bank be called in and required to establish their claims and demands and enjoining them from bringing any separate action or actions or proceedings against said

bank, or affecting its assets, save by proceedings in that action. Afterwards defendant Barron was appointed as a co-conservator with Zimmerman. Following the making of this order, the said court of common pleas from time to time entered a number of orders directing the conservators-receivers in their management of the affairs of the failed bank. Among these orders was one entered on March 9, 1934, authorizing and directing the defendants to pay the plaintiff the sum of $11,012.14, representing the rents collected, through a certain period, from property covered by mortgages hypothecated to the plaintiff as security. So far as the record discloses this sum was paid to the plaintiff pursuant to said order.

On September 8, 1933, the plaintiff filed its proof of claim with the defendants for the amount then claimed to be due it from the failed bank and the proof of claim so filed was entitled as follows:

"Court of Common Pleas.
"State of South Carolina, County of Richland.

"Re: Ex Parte Liquidation of the Central Union Bank of South Carolina, Columbia, S. C."

About May, 1934, the defendants as conservators-receivers consulted with the plaintiff with the view to paying a dividend to the unsecured creditors of the bank without paying any dividends to the plaintiff. This course was considered by the defendants in view of the fact that the indebtedness to the plaintiff had been reduced to $858,860.69, whereas the collateral, which the plaintiff held to secure said debt, had on March 24, 1934, been appraised by its representative as being of the value of $1,378,996.28, and was ample, in the opinion of the defendants, to secure the debt. The plaintiff then instituted this suit for the purpose of enjoining the payment of said dividends by the defendants and claimed that it should participate in any dividends that might be paid. The judge below issued a temporary restraining order enjoining the payment of the dividends. The defendants appeared and raised the question of the right of the court below to entertain the suit for lack of jurisdiction, setting up the fact that the state court had already taken jurisdiction of the affairs of the failed bank and had constructive possession of the res.

The court below held that the federal court had jurisdiction, because of the character of the plaintiff, it being conceded that no stock was held in the Reconstruction Finance Corporation except that owned by the United States and because the defendants, as conservators, were statutory officers and not equity receivers appointed by the court of common pleas of Richland county, S. C. The court below further held that the state court did not have possession of the res in the sense that such possession would bar action in another court and entered a decree denying the preliminary injunction prayed for, but granted the plaintiff the right within twenty days from the entry of the decree to reduce to possession the collateral which it held by making an honest and bona fide bid, consistent with the value thereof, in purchasing the same. The court further ordered that in case the claimants so reduced said collateral to possession, such bid price should be applied on the indebtedness of the failed bank and that plaintiff might then file with the defendants, for allowance by them, a claim for the balance, if any due, and continued the temporary restraining order. From this decree of the court below the plaintiff appealed and the defendants brought a cross-appeal.

There are a number of assignments of error by both parties but only two questions are involved: (1) Whether the court below had jurisdiction to hear the cause. (2) What were the rights of the plaintiff as a secured creditor of the failed bank?

In considering the question of jurisdiction we have first to consider the capacity in which the defendants were acting while in charge of the assets of the failed bank and the character of the possession of the res had by the state court. It was specially provided by the act under which the defendants were appointed as conservators that, after liquidation was ordered, they should be "vested with the same powers and duties as receivers of banks under existing laws." Act South Carolina, May 16, 1933, 38 St. at Large, p. 489, § 1. Under the "existing laws" it was the duty of the receivers of insolvent banks, however appointed, to apply to the state court and to have the affairs of the bank liquidated under the supervision of the court. Code of South Carolina 1932, §§ 7848, 7852, 7854, and 7855. See Gibbes v. Zimmerman, 290 U. S. 326, 54 S. Ct. 140, 78 L. Ed. 342, a case involving this same bank. Pursuant to the South Carolina statute a suit was brought in the common pleas court of Richland county, and by order of that court the conservator was designated as acting receiver of the bank, and by various orders subsequently entered, the state court

took charge of the liquidation and directed the defendants in matters concerning the bank. That the officers of the plaintiff recognized this fact is shown by the filing of its claim against the bank with the conservators-receivers and entitling that claim as being in the "Court of Common Pleas" and by their accepting the benefits of an order entered by the state court directing the payment to it of a sum of money. It is clear that up to the time when the conservators-receivers notified the plaintiff that they contemplated the payment of a dividend to the unsecured creditors without including in such distribution the claim of the plaintiff, the plaintiff acquiesced in the control and direction by the state court of the defendants in the liquidation, and it was only when it was feared that action would be taken by the defendants, not favorable to the plaintiff, that another jurisdiction was sought.

The Act of the South Carolina Legislature of March 9, 1933 (38 St. at Large, p. 1174), provided for a period of "Conservation" or a trial period during which the Governor should be in control of the bank. The Act of South Carolina Legislature of May 16, 1933 (38 St. at Large, p. 489), expressly provided, however, that after liquidation of a bank should be decided upon, the conservators should be vested with the powers and duties of receivers under the then existing laws, and should then have the right, as was done here, to apply to a court of competent jurisdiction for directions and instructions in the liquidation of the bank. The defendants having acquired all the powers and having undertaken all the duties of receivers and having applied to a court for instructions as to liquidation of the failed bank (Gibbes v. Zimmerman, supra), we have then to consider the effect of these various acts upon the jurisdiction of a federal court seeking, at the instance of a secured creditor, to direct and control the defendants in their course as to the liquidation of such bank.

The case of Department of Trade and Commerce v. Hertz et al. (heard in connection with Lion Bonding & Surety Co. v. Karatz) 262 U. S. 77, 43 S. Ct. 480, 484, 67 L. Ed. 871, is peculiarly pertinent to the instant case, and we think is controlling of the question of jurisdiction here involved. In that case the Department of Trade and Commerce of the State of Nebraska, under statutory authority, applied to a state court for authority to take possession of a bonding and surety company. This petition was granted and the company ordered into liquidation. A suit was filed in the federal court in the state of Minnesota against the company and receivers were appointed. Thereafter the Minnesota receivers filed a suit in the federal court in the district of Nebraska claiming that the Nebraska Department of Trade and Commerce had no proper authority to continue the liquidation of said company and asking that its assets and affairs be turned over to them for liquidation. In reversing the Circuit Court of Appeals, which upheld the suit of the federal receivers, the Supreme Court said:

"Moreover, even if the federal court for Minnesota would have had jurisdiction to appoint the receivers, and these receivers had secured ancillary appointment in the Nebraska district, the Hertz bill should still have been dismissed, because the property was then in the possession of the state court. * * *

"Where a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. Wabash R. Co. v. Adelbert College, 208 U. S. 38, 54, 28 S. Ct. 182, 52 L. Ed. 379, 386. Compare Oklahoma v. Texas, 258 U. S. 574, 581, 42 S. Ct. 406, 66 L. Ed. 771 [774]. Possession of the res disables other courts of coordinate jurisdiction from exercising any power over it. Farmers' Loan & T. Co. v. Lake Street Elev. R. Co., 177 U. S. 51, 61, 20 S. Ct. 564, 44 L. Ed. 667 [671]. The court which first acquired jurisdiction through possession of the property is vested, while it holds possession, with the power to hear and determine all controversies relating thereto. It has the right, while continuing to exercise its prior jurisdiction, to determine for itself how far it will permit any other court to interfere with such possession and jurisdiction. Palmer v. Texas, 212 U. S. 118, 126, 129, 29 S. Ct. 230, 53 L. Ed. 435 [438, 439]. * * *

"But, if the legality of the state court's action was to be questioned, it could be done only by laying the proper foundation through appropriate proceedings in that court." Citing cases.

There can be no question that defendants, under the direction of the state court, were acting as receivers just as much so as if they had been appointed by the court. The state court was directing all matters connected with the liquidation and through

the defendants had such possession of the res as would remove them from the jurisdiction of all other courts. As was said by the Supreme Court in Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 232, 53 L. Ed. 435: "The Federal and state courts exercise jurisdiction within the same territory, derived from and controlled by separate and distinct authority, and are therefore required, upon every principle of justice and propriety, to respect the jurisdiction once acquired over property by a court of the other sovereignty. If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty."

See, also, 15 C. J. pp. 1134–1136, 1171–1173, 1178, 1179.

As was said by Lurton, C. J., in the case of Phelps v. Mutual Reserve Fund Life Ass'n (C. C. A.) 112 F. 453, 464, 61 L. R. A. 717: "If there are principles of comity or of statutory construction by which so deplorable a conflict between coequal courts of concurrent jurisdiction may be avoided, and the operations of our independent systems of judicature rendered harmonious, it is our highest duty to discover and apply them. 'It forms a recognized portion of the duty of this court,' said Justice Campbell, in Taylor v. Carryl, 20 How. 583, 595, 15 L. Ed. 1028, in speaking for the court, 'to give preference to such principles and methods of procedure as shall serve to conciliate the distinct and independent tribunals of the state and the Union, so that they may co-operate as harmonious members of a judicial system, coextensive with the United States, and submitting to paramount authority of the same constitution, laws, and federal obligations.'"

■ Innumerable decisions could be cited sustaining the proposition that it is not only a rule of comity, but one of necessity, that courts of one jurisdiction will not interfere with courts of another jurisdiction, and this is especially true with regard to the care always taken by the federal courts not to come in conflict with the jurisdiction of a state court. This rule is a necessity because of our dual form of government and courts. It will not do to assume that a litigant cannot obtain justice in one jurisdiction or the other and his proper remedy is to apply to that court which is already administering the matter.

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and, for the time being, disables other courts of co-ordinate jurisdiction from exercising like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons." Palmer v. Texas, supra.

"* * * A court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession, or the control of the property. * * * Those principles are of general application, and not peculiar to the relations of the courts of the United States to the courts of the states; they are, however, of especial importance with respect to the relations of those courts, which exercise independent jurisdiction in the same territory, often over the same property, persons, and controversies; they are not based upon any supposed superiority of one court over the others, but serve to prevent a conflict over the possession of property, which would be unseemly and subversive of justice. * * *" Wabash R. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 188, 52 L. Ed. 379.

■ The defendants were, in effect, receivers acting under the directions of the state court and were in possession of the res; the officers of the plaintiff had recognized the authority of the defendants as conservators-receivers and had submitted to the jurisdiction of the state court with regard to matters connected with the liquidation of the failed bank; and the jurisdiction of the state court was to the exclusion of the jurisdiction of any other court as far as such matters were concerned. It was the duty of the plaintiff to seek the relief it sought in the state court, and the District Court of the United States for the Eastern District of South Carolina was without jurisdiction to hear the plaintiff's suit.

In the case of Commonwealth of Pennsylvania v. Williams et al., 55 S. Ct. 380, 385, 79 L. Ed. ——, decided by the Supreme Court on February 4, 1935, there is a discussion of the question of federal and state jurisdictions, and the decision is controlling

here. The opinion lays down the rule that even where the federal court has jurisdiction, it should, in the exercise of a proper discretion, step aside in favor of the state courts, where to exercise its jurisdiction would involve interference with the internal affairs of a domestic corporation of the state.

Among other things, Mr. Justice Stone says: "A court of equity, which in its discretion may refuse to protect private rights when the exercise of its jurisdiction would be prejudicial to the public interest, see Greathouse v. Dern, 289 U. S. 352, 359, 360, 53 S. Ct. 614, 77 L. Ed. 1250, or deny relief upon performance of a condition which will safeguard the public interest and secure substantial justice to the complainant, see Harrisonville v. Dickey Clay Co., 289 U. S. 334, 338, 53 S. Ct. 602, 77 L. Ed. 1208, would seem bound to stay its hand in the public interest, where it reasonably appears that the private right will not suffer. It is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy. Fenner v. Boykin, 271 U. S. 240, 243, 244, 46 S. Ct. 492, 70 L. Ed. 927; Massachusetts State Grange v. Benton, 272 U. S. 525, 527, 47 S. Ct. 189, 71 L. Ed. 387; Matthews v. Rodgers, 284 U. S. 521, 525, 52 S. Ct. 217, 76 L. Ed. 447. Cf. Central Kentucky Natural Gas Co. v. Railroad Commission of Kentucky, 290 U. S. 264, 273, 54 S. Ct. 154, 78 L. Ed. 307. It has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state. See Rogers v. Guaranty Trust Company, supra, 288 U. S. [123] 130, 131, 53 S. Ct. 295, 77 L. Ed. 652, 89 A. L. R. 720. Compare Burnrite Coal Briquette Co. v. Riggs, supra, 274 U. S. [208] 212, 213, 47 S. Ct. 578, 71 L. Ed. 1002; Canada Malting Co., Ltd., v. Paterson Steamships, Ltd., 285 U. S. 413, 419–423, 52 S. Ct. 413, 76 L. Ed. 837; Langnes v. Green, 282 U. S. 531, 541, 51 S. Ct. 243, 75 L. Ed. 520. There are stronger reasons for adopting a like practice where the exercise of jurisdiction involves an unnecessary interference by injunction with the lawful action of state officers. Matthews v. Rodgers, supra, 284 U. S. 525, 52 S. Ct. 217, 76 L. Ed. 447."

In view of our conclusion, on the question of jurisdiction, it is not necessary to discuss the rights of the plaintiff as a secured creditor of the failed bank.

The decree of the court below is reversed, and the cause remanded, with direction to dismiss the plaintiff's complaint for want of jurisdiction.

Reversed.