JAMES F. MCKAY III, CHIEF JUDGE
| plaintiff, Taxicab Insurance Store, LLC (“TIS”)) seeks appellate review of the trial court’s September 20, 2016 judgment, granting the exceptions of nti cause of action and no right of action filed by American Service Insurance Company, Inc. (“ASIC”), Michael J. Harrington (“Harrington”), Charlotte Louise LeBlanc (“LeBlanc”), and Regions Insurance Inc. (“Regions”) (collectively referred to as “the defendants”), dismissing TIS’s action in its entirety, with prejudice. For the reasons set forth below, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
In 2011, TIS began operating as a producer for Imperial Fire and Casualty Insurance Company (“Imperial”), providing commercial automobile insurance policies to taxicab drivers in Louisiana. Thereafter, ASIC also began issuing insurance policies to taxicab drivers in the greater New Orleans area. Regions, Harrington, and Le-Blanc acted as producers for ASIC.
12TIS filed a petition for damages and a supplemental/amending petition against the defendants.[1] Therein, TIS claims that the defendants were working together to solicit business from TIS’s customers by offering illegal insurance' policies at unapproved premium rates. The petition maintains that the defendants specifically marketed the illegal policies to TIS’s customers, representing that ASIC could offer lower rates and better coverage. TIS asserts that the defendants weré aware that the rates were not approved by the Insurance Commissioner, and that certain unapproved discounts and products were being offered to the taxicab insureds in violation of the law.[2] TIS further alleges a significant loss of business as a result of the defendants’ actions.
The petition for damages, as amended, asserts the following eight counts, or causes of action, against the defendants: 1) tort; 2) fraud; 3) tortious interference with a contract; 4) tortious interference with a business relationship; 5) violations of the Louisiana Unfair Trade Practices Act (“LUTPA”), La. R.S. 51:1401, et seq.; 6) violations of the Louisiana Anti-Trust Act, La. R.S. 51:122 and 123; 7) unjust *456 enrichment; and alternatively, 8) declaratory relief, asserting that La. R.S. 51:1406(1) is unconstitutional.
In response to TIS’s supplemental and amending petition, the defendants filed exceptions of no cause of action and no right of action, arguing, generally, |athat the alleged violations of the Insurance Code cannot support a private cause of action for damages because the Insurance Commissioner has exclusive jurisdiction to enforce the Insurance Code. More specifically, the defendants argued in support of the exceptions that: 1) TIS does not have a claim for tort, fraud, or unjust enrichment because it does not allege that the defendants made any representations or had any duty to TIS; 2) TIS does not have a tortious interference with a contract claim because there was no contract between TIS and the defendants; 3) TIS does not have a tortious interference with a business relationship claim because the petition fails to allege facts to show malice or ill-will or that the defendants prevented any party from dealing with TIS; 4) TIS does not have a LUTPA claim because such claims are subject to the exclusive jurisdiction of the Louisiana Insurance Commissioner; and 5) TIS does not have an anti-trust claim because it does not allege the existence of a horizontal or vertical agreement and does not allege facts that would support a monopoly claim.
The matter was heard on September 9, 2016. In a judgment dated September 20, 2016, the trial court granted the defendants’ exceptions of no cause of action and no right of action and dismissed the action in its entirety, with prejudice.[3] TIS timely appealed.
On appeal, TIS sets forth eight assignments of error, asserting that the trial court erred in granting the exceptions, and in finding that TIS failed to set forth a Lcause and/or right of action against the defendants for: 1) tort, 2) fraud; 3) tor-tious interference with a contract; 4) tor-tious interference with a business relationship; 5) unfair trade practices; 6) antitrust violations; 7) unjust enrichment; and 8) declaratory relief concerning the constitutionality of La. R.S. 51:1406(1). For the reasons set forth below, we find no merit in these assignments of error.
LAW AND ANALYSIS

Standard of Review

In Zeigler v. Housing Authority of New Orleans, 2015-0626, pp. 4-5 (La. App. 4 Cir. 3/23/16), 192 So.3d 175, 178, this Court reiterated the standard of review regarding exceptions of no cause of action and no right of action, as follows:
“Exceptions of no cause of action present legal questions, and are reviewed under the de novo standard of review.” Phillips v. Gibbs, 2010-0175, p. 3 (La. App. 4 Cir. 5/21/10), 39 So.3d 795, 797. This exception is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. Id., 2010-0175 at p. 3, 39 So.3d at 797-98. “All well-pleaded allegations of fact are accepted as true and correct, and all doubts .are resolved in favor of sufficiency of the petition so as to afford litigants their day in court.” Foti v. Holliday, 2009-0093, p. 5 (La. 10/30/09), 27 So.3d 813, 817. “The burden of demonstrating that a petition fails to state a cause of action is upon the mover.” Id., citing Ramey v. De *457 Caire, 2003-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 119.
Likewise, “[pjeremptory exceptions raising the objection of no right of action are reviewed de novo on appeal as they involve questions of iaw.” Fortier v. Hughes, 2009-0180, p. 2 (La. App. 4 Cir. 6/17/09), 15 So.3d 1185, 1186. “The exception of no right of action tests whether the plaintiff has a real and actual interest in the action.” Weber v. Metro. Cmty. Hospice Found., Inc., 2013-0182, p. 4 (La. App. 4 Cir. 12/18/13), 131 So.3d 371, 374, citing La. C.C.P. art. 927(5). The function of the exception is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the lawsuit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n, 94-2015, p. 4 (La. 11/30/94), 646 So.2d 885, 888. “The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation.” Indus. Companies, Inc. v. Durbin, 2002-0665, p. 12 (La. 1/28/03), 837 So.2d 1207, 1216.

Cause of Action!Count 1 (Tort)

TIS alleges that the defendants owed a duty to compete fairly and honestly and to comply with the rules prescribed by the Louisiana Insurance Code. La. R.S. 22:12 provides that “[n]o person shall be authorized to transact or shall transact a business of insurance in this state without complying with the provisions of this Code.” The petition alleges that the defendants breached their duty to comply with the state’s insurance regulations, claiming that the defendants, in issuing unlawful insurance contracts, intentionally violated the Insurance Code in order to commandeer business away from TIS.
The Insurance Commissioner . is charged with the enforcement of the Insurance Code. See La. R.S. 22:11. La. R.S. 22:13(A) lists the remedies for violations of the provisions of the Insurance Code, which includes penalties .assessed by the Commissioner. The Insurance Code, however, does not provide for a private right of action for violations. See Clausen v. Fidelity and Deposit Company of Maryland, 95-0504, p. 4 (La. App. 1 Cir. 8/4/95), 660 So.2d 83, 86.
In Louisiana, legal responsibility in tort is determined by application of a duty/risk analysis. This analysis requires the plaintiff to prove four distinct elements: (1) existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) the breach is a cause in fact of damage; arid (4) actual damage was sustained by the plaintiff. Private Connection Property, Inc. v. Fox Cars, LLC, 2008-1129, p. 9 (La. App. 4 Cir. 2/10/09), 6 So.3d 866, 872 (citing Becnel v. Grodner, 2007-1041, p. 3 (La. App. 4 Cir. 4/2/08), 982 So.2d 891, 894).
In the present case, the only duty alleged to have been breached by the defendants is their violations of the Insurance Code. The petition does not assert a legal relationship between TIS and the defendants, and it fails to establish the existence of a duty owed to TIS. Thus, TIS’s tort claim fails as a matter of law.

Cause of Action/Count II (Fraud)

TIS alleges that the defendants committed fraud by knowingly issuing illegal policies to taxicab drivers, and by intentionally misrepresenting and/or suppressing the truth to the taxicab drivers regarding the policies. It is further alleged that this misrepresentation was done with the intention of obtaining an unjust advantage, while luring business away from TIS.
*458 To state a cause of action for fraud, the following three elements must be alleged: “ ‘(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury.’” Chapital v. Harry Kelleher & Co., Inc., 2013-1606, p. 13 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 86 (quoting Becnel, 2007-1041, p. 3, 982 So.2d at 894).
La. C.C. art. 1963 defines fraud as “a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.” However, in order to find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information. 1100 S. Jefferson Davis Parkway, LLC v. Williams, 2014-1326, p. 7 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1218 (citing Becnel, 2007-1041, p. 4, 982 So.2d at 894).
17Here, it is evident that the fraud alleged in the petition is based on the defendants’ misrepresentations to the taxicab drivers, not to TIS. The petition sets forth no misrepresentations made directly toward TIS. Moreover, there are no allegations that TIS relied upon any representations made by the defendants or took any action in relation to the alleged misrepresentations. Accordingly, we find that the petition fails to state a 'cause of action in fraud.

Cause of Action/Count III (Tortious Interference with a Contract)

TIS argues that the defendants tortiously interfered with the contracts between TIS and approximately six hundred taxicab drivers. The petition alleges that the defendants solicited TIS’s insureds and offered them an illegally low'premium in order to damage TIS’s business. The petition further alleges that the defendants acted in a manner which they knew would be detrimental to TIS’s business interests.
In 1989, the Louisiana Supreme Court for the first time recognized a very limited cause of action for tortious interference with contract in 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La. 1989). The Court in 9 to 5 Fashions held that a corporate officer has a duty to a third person who has a contractual relationship to the corporation not to intentionally cause the company to breach the contract. The Court further held that “[i]t is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract ... [i]n the present case we recognize ,.. only a corporate officer’s duty to refrain from intentional and unjustified interference With the contractual relation between his employer and a third person.” Id. at 234.
In MD Care, Inc., v. Angelo, 95-2361, 95-2362, (La. App. 4 Cir. 3/20/96), 672 So.2d 969, this Court addressed the cause of action for intentional interference with a contract, as follows:
The Supreme Court has not expanded the holding of 9 to 5 Fashions but has reiterated its “resolve in that case to advance with care.” Great Southwest Fire Insurance Co. v. CNA Insurance Cos., 557 So.2d 966, 969 (La. 1990). Appellate courts generally have disallowed a cause of action for tortious interference with a contract outside the facts of 9 to 5 Fashions, See Guilbeaux v. Times of Acadiana, Inc., 94-1270 (La. App. 3 Cir. 8/9/95), 661 So.2d 1027, 1033.
However, this Court has expressed a willingness to expand the cause uf action when the facts warrant. In Tallo v. Stroh Brewery Co., 544 So.2d 452 (La. App. 4th Cir.), writ den. 547 So.2d 355 (La.1989) this Court affirmed a dismissal for failure to state a cause of action where plaintiff alleged that the brewery *459 company’s rejection of an application for change of control of a distributorship constituted intentional interference with the contract between plaintiff and the distributor. Noting that 9 to 5 Fashions refused to wholly adopt the common law tort of interference with contract rights which consists of a “rather broad and undefined tort in which no specific conduct is prescribed ‘[sic],” this Court examined whether the defendants owed a duty to the plaintiff. Tallo held defendants owed no duty to 'plaintiff and plaintiff did not assert a cause of action. Tallo, 544 So.2d at 455. A concurrence stated the exception -in 9 to 5 Fashions is limited. Id.
In Neel v. Citrus Lands of Louisiana, Inc., 629 So.2d 1299 (La. App. 4th Cir. 1993), plaintiff alleged the defendant wrongfully denied access to defendant’s property in violation of a mineral lease between defendant and plaintiff’s employer and was liable for intentional interference, with plaintiffs employment relationship. The trial court granted defendant’s exception of no cause of action, but this Court reversed:
(T)here is the strong implication [in 9 to 5 Fashions] that the court recognized that the Louisiana law of intentional interference with contractual relationships should be far broader than the narrow facts before the court in 9 to 5 Fashions, although less broad than the amorphous law of some jurisdictions that seemed insusceptible of definition and reasonable limitation.
* * sh * * *
| ¡¡If Mr. Neel can establish that Citrus Lands .had a -duty to allow him to go on the land leased to [Neel’s employer], then he may well be able to prove that Citrus Lands violated that duty and is liable for the consequent damages such as the loss of’his job.
Neel v. Citrus Lands of Louisiana, Inc., 629 So.2d at 1301.
The plaintiff in Durand v. McGaw, 635 So.2d 409 claimed the defendant’s complaints to plaintiffs employer resulted in the plaintiffs-discharge from his employment and he alleged negligent and intentional interference with the contract. The trial court dismissed the claim on an exception of no cause of action, and this Court affirmed:
The facts' as alleged in' this case do not warrant expansion here [of 9 to 5 Fashions]. Considering .the basic principles underlying Louisiana tort law, as well as “modern empirical considerations and’the objectives of delictual law,” 9 to 5 Fashions, Inc. v. Spurney, supra at 231, defendants owed no obligation to plaintiff as a third person employee ... to refrain from expressing an opinion to (plaintiffs employer) concerning the nature and scope of the employee’s work. The. facts alleged do not constitute fault, and plaintiffs petition fails to state a cause of action for intentional interference with contract. ¡
Durand v. McGaw, 635 So.2d at 412.
Tallo, Neel, and Durand each examined whether the facts warranted expansion of the cause of action in 9 to 5 Fashions, The Court recognized the cause of action is based on fault, and the determinative factor in each case' was whether the defendant owed the plaintiff a duty, the breach of which might constitute intentional interference,with,a contract.
MD Care, Inc., 95-2361, 95-2362, pp. 5-7, 672 So.2d at 972-73.
Based on the jurisprudence, it is clear that before an action for tortious interference-with a contract .will be permit *460 ted, the plaintiff must identify a duty existing between it and the alleged tortfeasor, the violation of which would give rise to delictual liability. In the present case, as discussed hereinabove, TIS has not identified any such duty owed by the defendants. Therefore, TIS has failed to state a claim for tortious interference with contract upon which relief can be granted.

UnCause of Action/Count TV (Tortious Interference with a Business Relationship)

The petition alleges that the defendants improperly influenced certain taxicab drivers to cease business with TIS by intentionally misrepresenting the legality of the coverage provided under the ASIC policies and by offering the taxicab drivers an illegally low premium. The petition further alleges that the defendants acted with actual malice, deliberately intending to unlawfully damage TIS’s business.
The defendants contend that TIS failed to state a claim for tortious interference with a business relationship. They argue that TIS has failed to plead specific facts to support a finding that the defendants prevented TIS from dealing with third parties or that the defendants acted with actual malice.
Discussing the cause of action for tor-tious interference with a business relationship, this Court has stated:
Although this cause of action has an ancient vintage, Louisiana jurisprudence has viewed it with disfavor. Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 602 (6th Cir.1981). “Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort.” George De-negre, Jr., et al., Tortious Interference and Unfair Trade Claims: Louisiana’s Elusive Remedies for Business Interference, 45 Loy. L.Rev. 396, 401 (1999). “Simply put, in most cases in which a corporation is acting to maximize profits-rather than to harm another business-it will be difficult for a plaintiff to produce evidence of bad faith or malicious intent.” Id. at 404.
JCD Mktg. Co. v. Bass Hotels and Resorts, Inc., 2001-1096, p. 11 (La. App. 4 Cir. 3/6/02), 812 So.2d 834, 841.
| nIn Bogues v. Louisiana Energy Consultants, Inc., 46,434, p. 11 (La. App. 2 Cir. 8/10/11), 71 So.3d 1128, 1134-35 (citing our holding in JCD Mktg.), the Second Circuit Court explained:
The cause of action for tortious interference with business derives from La. C.C. art. 2315. Tortious interference is based on the principle that the right to influence others not to enter into business relationships with others is not absolute. Junior Money Bags, Ltd. [v. Segal, 970 F.2d 1 (5th Cir.1992)], citing Ustica Enterprises, Inc. v. Costello, 434 So.2d 137 (La. App. 5th Cir.1983). Louisiana law protects the businessman from “malicious and wanton interference,” though it permits interferences designed to protect legitimate interests of the actor. Dussouy [v. Gulf Coast Inv. Corp., 660 F.2d 594 (5th Cir.1981)]. A plaintiff bringing a claim for tortious interference with business must ultimately show “by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.” Junior Money Bags, Ltd., supra. *461 Significantly, it is not enough to allege that a defendant’s actions affected plaintiffs business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party. TJstica, supra.
A review of the petition in the present case reveals that TIS has not advanced any factual allegations that the defendants influenced the taxicab drivers not to deal with TIS or that the defendants actually prevented TIS from dealing with the taxicab drivers. The crux of the allegations made by TIS is that the defendants misrepresented the terms of the policies to the taxicab drivers and offered policies at a lower rate (albeit, an unapproved rate) in order to gain their business and maximize profits. There are no allegations that the defendants’ conduct was driven by ill will or malice toward TIS. Thus, we must conclude that the allegations set forth in the petition do not sufficiently state a cause of aetion for tortious interference with a business relationship as contemplated by the jurisprudence.

Cause of Action/Count V (Unfair Trade Practices)

1 12The petition alleges that the defendants violated LUTPA by acting in concert to unlawfully damage TIS’s business. Defendants counter, arguing that claims under the jurisdiction of the Commissioner of Insurance are exempt. The trial court accepted this argument and dismissed the LUTPA claims. We find no error in that ruling.
LUTPA is set out in La. R.S. 51:1401-1418 and provides at Sec. 51:1405(A) that “[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” However, La. R.S. 51:1406(1) specifically provides that the statute shall not apply to “actions or transactions subject to the jurisdiction of ... the insurance commissioner.”
La. R.S. 22:2(A)(1) states that “[i]t shall be the duty of the commissioner of insurance to administer the provisions of [the Louisiana Insurance Code].” La. R.S. 22:1961 states:
The purpose of this Part is to regulate the trade practices in the business of insurance, in accordance with the intent of congress as expressed in Public Law 15-79th Congress, by defining or providing for the determination of all acts, methods, and practices which constitute unfair methods of competition and unfair or deceptive acts and practices in this state, and to prohibit the same.
La. R.S. 22:1967 states that “[t]he commissioner of insurance shall have power to examine and investigate the affairs of every person engaged in the business of insurance ... in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by this Part.”
La. R.S. 22:1964, in pertinent part, provides:
The following are declared to be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
hs(l) Misrepresentations and false advertising of insurance policies. Making, issuing, circulating, or causing to be made, issued, or circulated any estimate, illustration, circular or statement, sales presentation, omission, or comparison that does any of the following:
(a) Misrepresents the benefits, advantages, conditions, or terms of any policy issued or to be issued.
(b) Misrepresents the dividends or share of the surplus to be received on any policy.
*462 (c) Makes a false or misleading statement as to the dividends or share of surplus previously paid on similar policies.
(d) Makes any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates.
(e) Misrepresents to any policyholder insured by any insurer for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance.
(f) Uses any name or title of any policy or class of policies misrepresenting the true nature thereof.
(g) Makes a misrepresentation for the purpose of effecting a pledge or assignment or effecting a loan against any policy.
(h) Misrepresents any policy as being shares of stock.
(2) False information and advertising generally. Making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading.
The LUTPA claims asserted against the defendants can clearly be characterized as misrepresentation, false information and/or false advertising in the issuance of the policies, as set forth in La. R.S. 22:1964. As such, these claims fall within the jurisdiction of the Insurance Commissioner. In light of the clear | ^pronouncement of La. R.S. 51:1406, we find that the actions taken by the defendants in issuing the taxicab insurance policies are specifically exempted from LUTPA.

Cause of Action/Count VI (Anti-Trust Violations)

TIS has alleged violations of both the Louisiana antitrust statute, La. R.S. 51:122, and the Louisiana anti-monopoly statute, La. R.S. 51:123. La. R.S. 51:122(A) provides that “[ejvery contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.” La. R.S. 51:123 provides, in part, that “[njo person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state.”
The petition alleges that the defendants, by knowingly utilizing illegal rates, priced their products in an unfair manner with an object to eliminate or retard competition and thereby illegally gain and exercise control over prices in the metropolitan New Orleans taxicab insurance market. The petition further alleges that the defendants conspired to eliminate TIS as a competitor and to acquire a monopoly in the taxicab insurance market.

Unreasonable, Restraint of Trade (La. R.S. 51:122)

As the First Circuit Court set forth in Van Hoose v. Gravois, 2011-0976, pp. 7-8 (La. App. 1 Cir. 7/7/11), 70 So.3d 1017, 1022:
The Louisiana antitrust statute provides that “[ejvery contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.” La. R.S. 51:122(A). The federal and state antitrust laws were intended to be sweeping *463 in breadth, encompassing every conspiracy, contract, or combination that restrains trade. Louisiana Power & Light Co. v. United Gas Pipe Line Co., 493 So.2d 1149, 1154-55 & n. 12 (La. 1986). Not every business arrangement that restrains trade in some manner is illegal, however. The first step in analyzing an agreement l1Bto restrain trade is to determine whether it should be categorized as horizontal or vertical. A horizontal conspiracy is an agreement between competitors that restrains trade at the same level of distribution, and such agreements are generally considered “per se” violations of antitrust law. Plaquemine Marine, Inc., 859 So.2d at 117; Southern Tool & Supply, Inc., 862 So.2d at 280. A vertical restraint is imposed by persons at different levels of distribution, usually by one higher up in the distribution chain' than the party restrained. When a vertical conspiracy is alleged, plaintiffs must show that the restraint of trade violates the “rule of reason.” Plaquemine Marine, Inc., 859 So.2d at 118.
The rule of reason analysis under both federal and Louisiana law requires proof of three elements: that the defendants (1) engaged in a conspiracy (2) that restrained trade or injured competition (3) in a particular market. Abraham v. Richland Parish Hosp. Service Dist. 1-B, 41,141 (La. App. 2d Cir. 8/23/06), 938 So.2d 1163, 1172, writ denied, 2006-2534 (La. 1/8/07), 948 So.2d 124.
Here, the petition fails to allege that either a horizontal or vertical conspiracy existed. The petition alleges that TIS and the defendants are- competitors. It does not allege,that the defendants are competitors. The horizontal conspiracy test requires that there be an agreement between competitors that restrains trade at the same level of distribution. Thus, there is no horizontal conspiracy alleged here. Additionally, the petition does not allege that TIS is in the distribution chain for the policies issued by the defendants. To the contrary, TIS acts as a producer for a totally different insurer. Accordingly, the petition does not allege a vertical restraint of trade. In sum, we find that TIS has not stated a cause of action for a restraint of trade violation under La. R.S. 51:122.

Monopolization (La. R.S. 51:123)'

To establish a cause of action for monopoly, the pleadings must state facts sufficient to show that the defendant:. (1) possessed monopoly power in a clearly defined economic and geographic market (the relevant market); and (2) that the defendant had the specific .purpose or intent to exercise or maintain that, power, as 11fidistinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. Abraham v. Richland Parish Hosp. Serv. Dist. 1-B, 39,841, p. 6 (La. App. 2 Cir. 2/8/05), 894 So.2d 1229, 1234 (citing Plaquemine Marine, Inc. v. Mercury Marine, 2003-1036, p. 12 (La. App. 1 Cir. 7/25/03), 859 So.2d 110, 119).
“Monopoly power is the ability to. control prices or to exclude competition from the market. Market power, or the power to restrict competition in a particular market, may occur because of the seller’s high market share in a particular, area, or when the seller offers a unique product that competitors are not able to offer.” HPC Biologicals, Inc. v. UnitedHealthcare of La., Inc., 2016-585, p. 17 (La. App. 1 Cir. 5/26/16), 194 So.3d 784, 798 (citing Plaquemine Marine, Inc., 2003-1036, p. 12, 859 So.2d at 119-20).
“The plaintiff charging attempted monopolization must prove a dangerous probability of actual monopolization of a particular market and specific intent to *464 monopolize.” Plaquemine Marine, Inc., 2003-1036, p. 12, 859 So.2d at 119 (citing Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 459, 113 S.Ct. 884, 892, 122 L.Ed.2d 247 (1993)).
In this case, TIS alleges that defendants attempted to acquire monopoly-power in the New Orleans metropolitan area commercial taxicab liability insurance market. It is further alleged that given their dominant market power, the defendants possessed the power to control prices and exclude competition. These allegations are mere conclusory statements of fact. The petition fails to sufficiently set forth facts to support the allegations that the defendants possessed monopoly power, a necessary element of its cause of action under La. R.S. 51:123. Moreover, TIS does not allege that the defendants had a specific intent to | ^monopolize and a dangerous probability of success. Accordingly, we find that the petition fails to state a cause of action for anti-trust violations.

Cause of Action/Count VII (Unjust Enrichment)

The petition alleges that the defendants were unjustly enriched and TIS was impoverished as a result of the defendants’ issuing and producing taxicab insurance with illegal rates.
The jurisprudence has identified the following five elements required to establish an unjust enrichment claim: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and resulting impoverishment; (4) an absence of “justification” or “cause” for the enrichment and impoverishment; and (5) no other remedy at law available to plaintiff. JCD Marketing Co. 2001-1096, p. 13, 812 So.2d at 842 (citing Baker v. Maclay Properties Co., 94-1529, p. 18 (La. 1/17/95), 648 So.2d 888, 897). The Legislature has codified unjust enrichment in La. C.C. art. 2298, which provides: “[a] person who has been enriched without cause at the expense of another person is bound to compensate that person.” Article 2298 further provides that “[t]he remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or ■ declares a contrary rule.”
The Supreme Court, in discussing the nature of a claim for unjust enrichment, has explained:
There is a general concept of quasi contractual obligations; it is a concept based upon the principle that where there is an unjust enrichment of one at the expense or impoverishment of another, then the value of that enrichment or else, in some cases, the amount of the impoverishment must be restituted. Pla-niol, Traite Elementaire De Droit Civil, T. 2, nO 812, nO 813 (8th ed. 1939). (footnote omitted).
Under this general theory of quasi contractual obligations founded upon an unjust enrichment we find the civil law action De in | 1srem verso. See Nicholas, Unjustified Enrichment in Civil Law, Part I, 36 Tul.L.Rev. 605 (1962), Part II, 37 Tul.L.Rev. 49 (1962). The Action de in rem verso, although recognized by this Court long ago, was not treated definitively and was only applied in the two cases to which we referred above. Garland v. Scott’s Estate, 15 La.Ann. 143 (1860); Payne & Harrison v. Scott, 14 La.Ann. 760 (1859).
The action, however, has been well developed in France, influenced in large measure by the French Civil Code articles from which our own are copied. See Nicholas, supra. Nicholas says: ‘Among the essentials of the civil law remedy are its generality and its corrective or supplementary character.’
*465 An early statement of the Actio de in rem verso is to be found in Patureau-Miran v. Boudier, Cour de Cassation (Ch. req.) June 15, 1892, (1893) S.I. 281, (1892) D.I. 596 (Fr.). Speaking of the derivation and nature of the action, the Court said:
* * It derives from the principle of equity which forbids enrichment at the expense of another, and since it has been regulated by no provision of the enacted law, its exercise is subject to no precise rules; it is sufficient that the plaintiff allege and undertake to prove that as a result of some sacrifice or act on his part he has procured an advantage to the defendant.’
Minyard v. Curtis Products, Inc., 251 La. 624, 650-51, 205 So.2d 422, 432 (La. 1967).
It is evident from the record that there was no business relationship of any kind between TIS and the defendants; no quasi-contractual obligation existed. More importantly, the petition does not allege that an impoverishment occurred as a result of any sacrifice or act on the part of TIS. The fact that the defendants’ business practices may have detracted business away from TIS, a competitor, does not give rise to a cause of action for unjust enrichment.

Cause of Action!Count VIII (Declaratory Relief, La. R.S. 51:1406(A) is unconstitutional)

In the alternative, it is asserted that if the court finds no right of action under LUTPA, then La. R.S. 51:1406 is unconstitutional as it deprives TIS of due process l^of law (La. Const. Art. 1 § 2) and access to courts (La. Const. Art. 1 § 22). Specifically, it is alleged that the statute denies TIS the right to bring a claim for damages as a result of unfair trade practices solely because it is a member of the insurance industry.
Regarding constitutional challenges to state statutes, the Supreme Court in State v. Brenan, 99-2291, p. 3 (La. 5/16/00), 772 So.2d 64, 67, stated:
It is well established that statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. State v. Griffin, 495 So.2d 1306, 1308 (La.1986) (citations omitted). Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. The attack will fail if the court determines that a reasonable relationship between the law and the promotion or protection of a public good, such as health, safety or welfare exists. Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515 (La. 1983).

Due Process:

La. Const. Art. 1 § 2 guarantees freedom from the deprivation of life, liberty or property without due process of law. TIS argues that it is deprived of a vested property right, which is protected by the guarantee of due process. The defendants counter, arguing that TIS never had a vested property right to such a claim. Thus, there can be no due process violation by the enactment of La. R.S. 51:1406(1). We agree.
It is well recognized that “there is no fundamental due process right to sue in tort or to recover damages because of the tortious acts of another.” Progressive Security Ins. Co. v. Foster, 97-2985, pp. 23-24 (La. 4/23/98), 711 So.2d 675, 689.
In Burmaster v. Gravity Drainage District No. 2 of the Parish of St. Charles, 366 So.2d 1381, 1387 (La. 1978), the Supreme Court explained:
| go Where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the *466 guarantee of due process. See Gibbes v. Zimmerman, 290 U.S. 326, 332, 54 S.Ct. 140, 78 L.Ed. 342 (1933); Pritchard v. Norton, 106 U.S. 124, 132, 1 S.Ct. 102, 27 L.Ed. 104 (1882). However, where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives. See Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Our jurisprudence has recognized the validity of legislative regulation of causes of action, including replacement and even abolition, that one person may have against another for personal injuries. See Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971); Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (1919); See also Heirs of Fruge v. Blood Services, 506 F.2d 841 (5th Cir. 1975).
Here, the Louisiana Legislature amended Section 1406 to restrict causes of action under LUTPA by exempting “actions or transactions subject to the jurisdiction of ... the insurance commissioner.” This restriction is consistent with the provisions of La. R.S. 22:1961, et seq., cited herein-above, which provide that unfair trade practices in the insurance industry are exclusively governed by the Insurance Code and enforced by the Insurance Commissioner. Thus, we do not find that the Legislature acted arbitrarily in enacting Section 1406.

Access to the Courts:

La. Const. Art. I, § 22 provides that “[a] courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered -without denial, partiality, or unreasonable delay, for injury to him in his person, property,- reputation, or other rights.”
In M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371, p. 32 (La. 7/1/08), 998 So.2d 16, 37 (citing Crier v. Whitecloud, 496 So.2d 305 (La. 1986)), the Court explained that in adopting Article I, § 22 of the Louisiana Constitution, “the Constitutional Convention did not intend to limit the Legislature’s ability to restrict | ai causes of action. The access to courts clause does not ‘prohibit legislative restriction of legal remedies.’ Instead, the clause ‘operates only to provide remedies which are fashioned by the legislature.’ ” (internal citations omitted).
The Court further stated in Crier that “[i]n finding that the right to recover in tort is not a fundamental right, our court has noted that ‘[w]here access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary.’” Crier, 496 So.2d at 310 (quoting Bazley v. Tortorich, 397 So.2d 475, 485 (La. 1981) and Everett v. Goldman, 359 So.2d 1256 (La. 1978)).
As previously explained herein, pursuant to the enactment of La. R.S. 51:1406(1), TIS does not have a private right of action under LUTPA. Therefore, Art. 1§ 22 of the Louisiana Constitution affords no substantive relief in the present case.
CONCLUSION
For the foregoing reasons, we find no error on the part of the trial court in granting the defendants’ exceptions of no cause of action and no right of action, dismissing TIS’ claims with prejudice. Accordingly, we affirm.
AFFIRMED

. TIS filed the supplemental and amending petition in response to a February 25, 2016 judgment, which granted the defendants’ exceptions of no cause of action, no right of action; and vagueness; and granted TIS an opportunity to amend its petition.

. Prior to filing the petition for damages, TIS notified the Louisiana ‘Department of Insurance of the defendants’ alleged illegal actions.' Some regulatory actions were taken against the defendants, the details of which are not pertinent to this appeal.

. Before considering the merits of this appeal, we reviewed the wording of the trial court judgment and determined that it contains the decretal language necessary to be a final and appealable judgment.